Raymond K. ARNOLD, Plaintiff and Appellant,

v.

B.J. TITAN SERVICES COMPANY, and Hughes Tool Company, Defendant and Appellee.

No. 880117.

Supreme Court of Utah.

Nov. 9, 1989.

Roland Uresk, Machelle Fitzgerald, Roosevelt, for plaintiff and appellant.

Clark Allred, Vernal, for defendant and appellee.

PER CURIAM:

Plaintiff Raymond K. Arnold sued B.J. Titan Services, his former employer, after he was terminated from his employment without prior written warning. Plaintiff pleaded in the alternative that he was discharged without cause and was therefore entitled to severance pay or, if he was discharged for cause, that his employer had failed to comply with its own operating manual which defined procedures to be followed in disciplining and terminating employees.

After trial to the bench, the trial court found in pertinent part that Arnold was terminated for cause; that the operating manual which defined the procedures mentioned was in effect at the time Arnold was terminated; that in terminating Arnold, B.J. Titan failed to follow those procedures and there was no justification for its noncompliance with the operating manual; but that there was no mutual assent or additional requisite consideration between Arnold and B.J. Titan regarding the procedures set forth in the operating manual. Based upon those findings, the trial court concluded that Arnold was an employee-at-will; that there was no employment contract between him and B.J. Titan regarding length of employment; that there was no mutual assent or additional consideration to make the operating manual a part of the contract, and that Arnold was therefore not protected by its provisions. The trial court further concluded that under present Utah law, an employee-at-will may be terminated at the will of the employer. The trial court entered its order dismissing Arnold's complaint for no cause of action.

Arnold appeals, stating that the trial court's findings and conclusions are in conflict with this Court's decision in *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989).[1] We agree. *Berube, Caldwell v. Ford, Bacon & Davis Utah*, 777 P.2d 483 (Utah 1989), and *Lowe v. Sorenson Research Co., Inc.*, 779 P.2d 668 (Utah 1989), are dispositive on the issue before us, and we therefore reverse the trial court's ruling. Because our reversal is bottomed on the law, we sketch the facts from the evidence supporting the trial court's findings.

Arnold was employed in 1975 and was promoted to production manager of B.J. Titan's Roosevelt bulk plant in 1980, a position he held until he was terminated in 1986. During those years, B.J. Titan was formed after several mergers out of Hughes Tool Co. and Byron Jackson, Inc. B.J. Titan continued in effect the operating manual which spelled out procedures for disciplining and terminating employees and which had been promulgated by one of its predecessors in interest. Arnold himself followed those same procedures with people under his supervision. B.J. Titan experienced economic setbacks and substantially reduced its work force in 1985 and 1986. Arnold's last annual evaluation about a year before his termination praised his good record on equipment failures and low maintenance costs. It also suggested continuation of shop and yard appearance cleanup.

At trial, Arnold's supervisor read from the manual on problem solving and discipline procedures, which the trial court found in full force and effect at Arnold's termination. The relevant sections provide as follows:

*Oral Reprimand*

When correction or instruction has failed, and a well-known rule has been violated, or any other situation has developed that necessitates stringent disciplinary action, the supervisor will then take the proper steps to initiate the oral reprimand. In taking this reprimand action, the supervisor will, after obtaining all the facts of the case, talk *privately* with the employee and indicate the seriousness of the situation. He will be firm and positive as to further possible action in the event of recurrence. The supervisor will be

---

1. The trial court entered its order before *Berube* was issued by this Court, and Arnold's opening brief was filed seven days before the decision was published. Both parties thereafter briefed the issues with reference to *Berube.*

constructive and show the employee how to improve. Depending on the seriousness of the situation, the supervisor will determine the number of oral reprimands necessary and may, if in his opinion the circumstances warrant forward to the Personnel Department a written statement of the facts of the meeting(s) for inclusion in the employee's personnel file.

*Written Reprimand*

When one or more oral reprimands have failed to correct the situation, or when the initial action of the employee is of such serious consequence, the supervisor will then initiate the written reprimand. This written document will be prepared by the immediate supervisor and will be discussed with his superior, prior to discussing it with the employee. It will contain a complete summary of the entire situation, showing all the facts related to the case and previous supervisory actions taken in the matter.

The supervisor will then *privately* discuss the written reprimand with the employee. He will point out to the employee the extreme seriousness of the situation and, at the same time, make every effort to assist the employee at the conclusion of the interview.

The reprimand will be forwarded to the Personnel Department where it will be included in the employee's personnel file.

*Discharge*

When the offense warrants immediate severe disciplinary action or the progressive disciplinary steps outlined above have failed to correct the situation the employee is subject to discharge. Prior to discharging an employee the immediate supervisor must discuss the matter fully with his superior and prepare a written statement of the need for discharge. In case of discharge the final check must be available to the employee at the time of termination....

(Emphasis in original.)

The operating manual provided that written reprimands be signed by the employee and then sent to personnel. Arnold was terminated for failure to maintain company facilities up to standard, a notation found on his blue slip. The decision to terminate was made after a visit to the plant by Arnold's new supervisor during Arnold's two-week absence on vacation. Arnold's district manager testified that he never issued a written reprimand to Arnold, but that he spoke with him about improving the appearance of the plant. He also testified that he received a call from Houston to issue a written reprimand to Arnold to clean the place up in ninety days or be terminated. Fifteen minutes later, he was called back and instructed to terminate Arnold immediately. He had used ninety-day reprimands with others in the past.

Under well established principles of review, the factual assessment by the trial court will be upheld by this Court absent clear error. Utah R.Civ.P. 52(a); *Copper State Leasing v. Blacker Appliance and Furniture*, 770 P.2d 88 (Utah 1988). In the case before us, neither party attacks the trial court's findings, and from a review of the record, we find that the evidence adduced at trial well supports the court's findings.

On questions of law, this Court reviews the trial court's legal conclusions for correctness and accords them no particular deference. *Creer v. Valley Bank and Trust Co.*, 770 P.2d 113 (Utah 1988); *Scharf v. B.M.G. Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

In *Berube*, the lead opinion, representing the view of two justices, stated on the implied or express contract exception to the at-will doctrine:

An employee may demonstrate that his at-will termination breached an express or implied agreement with the employer to terminate him for cause alone. The at-will rule, after all, is merely a rule of contract construction and not a legal principle. The rule creates a presumption that any employment contract which has no specified term of duration is an at-will relationship. This presumption can be overcome by an affirmative showing by the plaintiff that the parties expressly or impliedly intended a specified term or agreed to terminate the relationship for cause alone. *Such evidence*

**544**

*may be found in employment manuals....*

771 P.2d at 1044 (emphasis added, citations omitted).

[M]utuality of obligation should not be a barrier to the enforcement of an implied-in-fact promise made by the employer to provide employment for a specified term or to terminate the employee for cause alone.

Similarly, independent consideration should not be required for implied-in-fact promises by the employer which are made after the employee has commenced work.

*Id.* at 1045.

The lack of separate consideration, ... is not fatal to a cause of action based upon an express or implied-in-fact promise by the employer that moves the employee's contract from at-will status.

*Id.*

Justice Zimmerman, concurring in the result, elaborated on this exception:

I agree with the lead opinion that there need not be any separate consideration for a promise not to discharge at-will, and I also agree that there need be no mutuality of obligation before an employee can sue to enforce such a promise. Because the at-will doctrine is only a presumption, the presumption can be rebutted by demonstrating that the parties did not intend the arrangement to be at-will. In this context, the representations made by the employer in *employee manuals, bulletins, and the like* are legitimate sources for determining the apparent intentions of the parties.

*Id.* at 1051 (emphasis added); *see also Caldwell; Lowe.*

The trial court found that Arnold was terminated without adherence to the procedures set out in the operating manual, that the discharge violated those procedures, and that there was no justification for not following the procedures. It then concluded that because there was no mutual obligation (assent) and no additional consideration, the operating manual could not be considered a part of the employment contract and Arnold was thus barred from recovering for his wrongful discharge. Under *Berube* and our more recent employment-at-will cases, that conclusion was incorrect. Instead, Arnold carried his burden that he was wrongfully discharged and was therefore entitled to damages. The case is therefore reversed and remanded to the trial court for an evidentiary hearing on the nature and amount of damages suffered by Arnold.

STEWART, J., concurs in the result.