Russell W. **SANDERSON**, Plaintiff and Appellant,

v.

**FIRST SECURITY LEASING COMPANY, a Utah corporation, Defendant and Appellee.**

No. 900254.

Supreme Court of Utah.

Dec. 8, 1992.

---

Bruce Wycoff, Salt Lake City, for Russell W. Sanderson.

Janet Hugie Smith, Rick L. Rose, Thomas R. Karrenberg, Salt Lake City, for First Sec. Leasing Co.

ZIMMERMAN, Justice.

Plaintiff Russell W. Sanderson appeals from summary judgment in favor of defendant First Security Leasing Company ("First Security"). Sanderson sued his former employer, First Security, claiming that First Security's discharge of him violated an implied-in-fact employment contract and breached an implied-in-law covenant of good faith and fair dealing. We affirm in part and reverse in part.

In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party. *Smith v. Batchelor,* 832 P.2d 467, 468 (Utah 1992); *Rollins v. Petersen,* 813 P.2d 1156, 1158 (Utah 1991); *Utah State Coalition of Senior Citizens v. Utah Power & Light Co.,* 776 P.2d 632, 634 (Utah 1989). We state the facts in this case accordingly. *See Sandy City v. Salt Lake County,* 827 P.2d 212, 215 (Utah 1992).

In October of 1980, First Security hired Sanderson to collect delinquent accounts. Throughout his first eight years at First Security, Sanderson received favorable performance evaluations and regular increases in salary and responsibility, becoming manager of First Security's equipment services division and account services department in 1984. He later served as a vice president of the company and as one of five members of the senior management committee, positions he held until his termination.

In December of 1988, First Security relieved Sanderson of his duties in the account services department but stressed that the change was not due to any fault on his part. A memo from C.S. "Bud" Cummings, president of First Security and then Sanderson's immediate supervisor, said, "Russ [Sanderson] has done an excellent job in managing both areas," but noted that in light of the increased responsibility of managing equipment services, "it is not fair to spread his talents so thin."

Around the time Cummings instructed him to devote all his efforts to equipment services, Sanderson became ill. His illness continued until his termination. Although

the precise nature of his ailment is unclear, it apparently involved both unexplained chest pains requiring the attention of a physician and depression or stress requiring the attention of a social worker and a psychiatrist. In his deposition, Sanderson estimated that he took approximately twenty-seven days of sick leave during his illness and that he was hospitalized at least six times.[1]

Because he was concerned about his job, Sanderson kept in touch with Cummings. In his deposition, Sanderson testified that on several occasions, Cummings told him to "take all the time ... needed, do what needed to [be] done. When [Sanderson] was ready to come back the job would be there." Sanderson also testified in his deposition that Cummings instructed him to entrust his major responsibilities to Sanderson's assistant vice presidents until he felt he could return to work. Sanderson cannot, however, remember the dates or particulars of these conversations.

Four months after Sanderson became ill, First Security placed Gary Judd as an intermediate supervisor between Sanderson and Cummings, so that Sanderson no longer reported directly to the president of the company. Sanderson testified in his deposition that Judd "was out to get [him]" because of past disagreements. During his first month as Sanderson's intermediate supervisor, Judd ordered an audit of equipment services, an audit that revealed numerous problems in Sanderson's department.

On May 19, 1989, Cummings told Sanderson that he was disappointed in him and that Sanderson must either accept a demotion or be terminated. Because Cummings refused to specify the level or salary of the position to which he would be demoted, Sanderson chose termination. Before our court, First Security attempts to characterize this choice as a voluntary resignation, but the company's own termination form, signed by Judd, identifies the action as an "involuntary termination[ ]" for "[u]nsatisfactory performance."

In the nine years Sanderson worked at First Security, the company issued three separate handbooks containing statements on termination. The first two, "Benefits and Policy Overview" ("benefits handbook") and "First Security Standards for Employee Conduct" ("standards handbook"), explicitly provided that employment with First Security was at-will, so that employees could quit or be fired at any time for any reason. First Security distributed these two handbooks to each employee and required its employees to sign an annual statement indicating that they understood and would follow the policies outlined in the standards handbook. Sanderson complied with this requirement. First Security distributed the third handbook, "First Security Banks [sic] Operating Procedures" ("the procedures handbook"), only to managers, including Sanderson. The procedures handbook set forth detailed guidelines for firing employees, requiring a series of informal and formal evaluations, warnings, and opportunities to improve performance or cease violating company policies. It is undisputed that Cummings did not provide Sanderson with such evaluations, warnings, and opportunities when he fired him. However, the procedures handbook also included the following paragraph ("paragraph six"):

> In situations where employee behavior warrants immediate termination the stages of this process do not need to be followed. Termination in these cases must be approved by the appropriate Division/Subsidiary Head Office.

On September 28, 1989, Sanderson sued First Security for wrongful termination, claiming that First Security breached an employment contract implied from its procedures handbook and Cummings' oral assurances and violated the implied covenant of good faith and fair dealing. The trial

---

1. Sanderson argues that this court should not consider his deposition because in its motion for summary judgment, First Security cited to but did not attach the relevant pages of the deposition. Sanderson is mistaken. Under the Utah Code of Judicial Administration, First Security had the option of either citing to or attaching the deposition pages on which it relied. See Utah R.Jud.Admin. 4–501(1)(a).

judge granted summary judgment for First Security, and Sanderson appealed. We affirm in part and reverse in part.

■ Before turning to the merits of this case, we state the applicable standard of review. Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Sandy City*, 827 P.2d at 217–18; *Rollins*, 813 P.2d at 1159; *Landes v. Capital City Bank*, 795 P.2d 1127, 1129 (Utah 1990). Because· entitlement to summary judgment is a question of law, no deference is due the trial court's determination of the issue. We affirm only if the decision before us was correct. *Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990).

■ This appeal requires us to revisit the evolving doctrine of employment at will. In 1989, this court converted the common law rule stating that absent an express agreement, employment was at-will into a mere presumption. We stated that a plaintiff could rebut this presumption by proving the existence of an implied-in-fact employment contract. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Durham, J., joined by Stewart, J.); *id.* at 1051 (Zimmerman, J., concurring in the result) (Utah 1989). Sanderson correctly notes that the existence of an implied-in-fact contract is a factual question committed to the sound discretion of the jury. *See id.* at 1044 (Durham, J., joined by Stewart, J.); *id.* at 1052 (Zimmerman, J., concurring in the result). However, the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists. *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 56 (Utah 1991); *Berube*, 771 P.2d at 1052 (Zimmerman, J., concurring in the result). If a reasonable jury cannot find that an implied contract exists, summary judgment is appropriate. *Caldwell v. Ford, Bacon & Davis Utah, Inc.*, 777 P.2d 483, 486 (Utah 1989).

■ With this standard in mind, we review Sanderson's arguments for the existence of an implied-in-fact contract. We begin with Sanderson's contention that

First Security's procedures handbook created an implied contract to fire employees only in accordance with the termination guidelines set forth in that manual. In past cases, we have recognized that employee handbooks may create such contractual rights. *See, e.g., Arnold v. B.J. Titan Servs. Co.*, 783 P.2d 541, 544 (Utah 1989) (per curium); *Lowe v. Sorenson Research Co.*, 779 P.2d 668, 670 (Utah 1989); *Caldwell*, 777 P.2d at 486. First Security acknowledges this authority but contends that the handbook did not create an implied-in-fact contract in this case, arguing first, that First Security's termination procedures were mere discretionary guidelines for supervisory personnel, and second, that First Security's standards and benefits handbooks disclaimed any intention to modify its at-will employment.

We do need not decide whether or under what circumstances the procedures for termination set out in the supervisors' manual became part of the terms of Sanderson's employment or of the employment of all other employees. Even if we assume that the termination procedures did become part of Sanderson's employment contract, the entry of summary judgment was appropriate because paragraph six of those procedures granted First Security unbounded discretion to discharge employees *without* following the guidelines:

> In situations where employee behavior warrants immediate termination the stages of this process do not need to be followed.

The only procedure applicable to such a termination is approval by the "appropriate Division/Subsidiary Head of Office." It is undisputed that First Security satisfied this requirement. Consequently, we affirm the summary judgment on this issue and do not reach the issues of guidelines and disclaimers urged by First Security. *Cf. Brehany*, 812 P.2d at 56–57.

Having disposed of Sanderson's handbook claim, we turn to his alternative basis for alleging an implied-in-fact contract. Sanderson argues that Cummings' oral assurances that "the job" would be there when he was ready to return to work re-

butted the at-will presumption and prevented his dismissal. First Security responds that even if Cummings made the statements, they amounted only to encouragement and optimism and were "too fragile a base on which to rest such a heavy obligation inherent in such a contract."

First Security's argument assumes that oral statements can rebut the at-will presumption only if they specify a period of employment or create a just-cause standard for dismissal. We disagree. At-will employment is a bundle of different privileges, any or all of which an employer can surrender through an oral agreement. In addition to a promise for a specified employment term or a for-cause requirement for termination, an employer can, for example, agree to use a certain procedure for firing employees or promise not to fire employees for a certain reason, thereby modifying the employee's at-will status.

The latter example—a promise not to fire for a certain reason—illustrates the situation in the present case. Taking the facts in the light most favorable to Sanderson, as we must, *Smith*, 832 P.2d at 468, we agree that if Cummings made the alleged statements, Sanderson may have had an implied-in-fact contract with First Security. Sanderson was concerned that his absenteeism would cost him his job. To allay his fears, Cummings, who was not only his supervisor but also the president of the company, assured him that he should take all the time he needed to recover from his illness. If the situation unfolded as Sanderson has described it and if the statements were clear and unequivocal, a reasonable jury could find that they modified the express at-will terms of the employee manual regarding causes for discharge and constituted an explicit, enforceable term not to fire Sanderson because of his illness-induced absenteeism. A jury could find that, contrary to First Security's characterization, the statements as recounted by Sanderson were neither vague encouragement nor hyperbolic optimism because they conveyed Cummings' clear and unequivocal intention to relinquish his right to fire Sanderson because he had missed so much work. *See*

*Pankow v. Westamerica Mortgage Co.*, 740 F.Supp. 1309, 1313 (N.D.Ill.1990); *cf. Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 473 N.W.2d 268, 273–75 (1991). Thus, the statements could support a finding of an implied-in-fact contract term limiting First Security's freedom to discharge for any reason whatsoever.

Notwithstanding this holding, we stress the narrowness of the implied-in-fact contract term that Sanderson's allegations would support. Even if his statements are interpreted in the light most favorable to Sanderson, Cummings did not promise that he would fire Sanderson only for cause or only for good cause. He promised merely that he would not fire Sanderson for being unable to work because of his current illness. He retained his at-will prerogative to fire Sanderson at any time for any *other* reason. In order to ascertain whether Cummings breached this alleged implied-in-fact contract and fired Sanderson for being unable to return to work, the finder of fact must first determine the reason for Sanderson's termination. On Sanderson's termination form, First Security identified "[u]nsatisfactory performance" as the reason for the firing, which implies that Cummings was dissatisfied with Sanderson's management of his department. If Cummings' dissatisfaction was unrelated to Sanderson's illness-induced absence from work, his discharge was not barred by the implied-in-fact contract term Sanderson alleges. However, a factual question exists as to whether Sanderson's absenteeism prevented him from effectively managing his department. If so, Cummings may have fired Sanderson for absenteeism, in breach of his implied-in-fact employment contract, and Sanderson may be entitled to contract damages computed under the standard set forth in *Beck v. Farmers Insurance Exchange*, 701 P.2d 795, 801 (Utah 1985). Because factual questions exist as to whether Cummings made the statements Sanderson alleges and why Cummings fired Sanderson, we reverse the summary judgment on the issue of an employment contract implied from Cummings' oral assurances.

As a final matter, we address Sanderson's argument that First Security breached an implied covenant of good faith

and fair dealing when it fired him. Three times in the past three years, we have refused to recognize an implied-in-law covenant of good faith and fair dealing that creates a for-cause standard for dismissal. *See Heslop v. Bank of Utah,* 839 P.2d 828, 840 (Utah 1992); *Brehany,* 812 P.2d at 55; *Loose v. Nature-All Corp.,* 785 P.2d 1096, 1097–98 (Utah 1989). As we explained in *Brehany,* although every contract is subject to an implied covenant of good faith, that implied covenant "cannot be construed ... to establish new, independent rights or duties not agreed upon by the parties." 812 P.2d at 55. We affirm that position and reject Sanderson's argument to the contrary.

In sum, we affirm the summary judgment on Sanderson's handbook and implied covenant of good faith and fair dealing claims, reverse on his claim of oral contractual terms, and remand for proceedings consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., STEWART and DURHAM, JJ., concur.