**Edmund Todd EVANS and Lou Anne Ross Evans, Plaintiffs and Appellants,**

v.

**GTE HEALTH SYSTEMS INCORPORATED, a Delaware corporation, Defendant and Appellee.**

**No. 920641–CA.**

Court of Appeals of Utah.

Aug. 3, 1993.

Roger H. Hoole, Salt Lake City, for plaintiffs and appellants.

Brian C. Johnson and Roger A. Moffitt, Salt Lake City, for defendant and appellee.

Before GARFF, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

Appellant Edmund Todd Evans (Evans) appeals from the trial court's entry of summary judgment in favor of GTE Health Systems Incorporated (GTE).[1] We affirm.

## FACTS

Because this is an appeal from a summary judgment, we recite the facts and all reasonable inferences therefrom in the light most favorable to Evans, the nonmoving party. *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 304 (Utah 1992). GTE develops, produces and sells computer software for medical care application. Some of GTE's software is designed to run on IBM hardware. In the spring of 1989, GTE opted to participate in an "IBM Sales Agent Program" (the IBM program), whereby IBM would compensate GTE for establishing sales agents for IBM's computer products in certain geographical areas.

On June 26, 1989, in conjunction with the IBM program, GTE offered Evans a job as a sales representative in Fort Lauderdale and Miami. His duties included participation in the IBM program. During the interviewing process, Kent Gale, assistant vice president of sales and marketing for GTE, and Ray Moore, supervisor of GTE's southern region, told Evans that in his first year of employment he would be expected to sell his home and relocate to Miami, attend an IBM Sales Agent Training Program, become familiar with GTE products, and begin making contacts and establishing relationships with hospitals that might be interested in GTE products. Gale informed Evans he was not expected to close significant sales until the end of 1990 or early 1991, and that he would not be terminated unless he was unable to close sales by the first or second quarter of 1991. In addition, GTE promised Evans a promotion from Senior Marketing Representative to Consulting Marketing Representative after he sold his first system. Before accepting the offer, Evans made it clear in interviews with both Gale and Moore that he was only interested in a long-term employment relationship. Both men responded that GTE was also interested in a long-term relationship.

After accepting the GTE job offer, Evans put his home on the market, moved his

---

**1.** The claims of Evans's wife, Lou Anne Ross Evans, were dismissed prior to the motion for summary judgment, and she is not participating in this appeal.

family in with relatives in preparation for the move to Florida, and began his training program. He also declined another job offer. Evans's wife discontinued her home-based preschool, gave away her supplies, and referred her students to other teachers. In addition, the Evanses sold or gave away items of property they did not intend to move to Florida.

On September 1, 1989, GTE told Evans that it was delaying his house purchasing trip to Florida, scheduled for September 6, 1989, because of problems with the IBM program in Florida. On September 6, 1989, less than two and one-half months after Evans had begun work, GTE notified Evans that it had eliminated his position in Florida. GTE had decided, for unspecified "economic reasons," to discontinue the IBM program, and chose not to continue Evans's employment in another capacity. GTE gave Evans sixty days severance pay. Evans remained unemployed for approximately seven months until he obtained a sales position in Boston.

On January 30, 1990, Evans and his wife filed a five count complaint against GTE. Subsequently, the Evanses voluntarily withdrew their tort claims, and Evans abandoned his implied covenant of good faith and fair dealing claim at oral argument on the summary judgment motion. The only remaining claims at the time of the summary judgment hearing were that, by contract, GTE had covenanted that Evans would be employed for a fixed term, ending sometime in 1991, and that GTE had breached this contract by terminating him earlier without cause.

The trial court noted the strong presumption that employment contracts in Utah are "at-will," and found that Evans had not overcome this presumption. Alternatively, while the court expressed some doubts about whether the economic motive for discharge met the requirements of "cause," the court concluded that the company had the right to act as it did and that Evans's discharge was "proper."[2]

## STANDARD OF REVIEW

The issue presented on appeal is whether the trial court erred in granting summary judgment to GTE. The trial court based this decision upon a conclusion that there was insufficient evidence to create an issue of material fact as to the existence of an implied employment contract.[3]

"Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 999–1000 (Utah 1991) (citing Utah R.Civ.P. 56(c)). In reviewing a summary judgment, this court must liberally construe the evidence and all inferences that may be reasonably drawn from the evidence in favor of the party opposing the motion. *Id.* at 1000. "[I]f the evidence presented is such that no reasonable jury could conclude that the parties agreed to limit the employer's right to terminate the employee, it is appropriate for a court to decide the issue as a matter of law." *Id.* at 1001. As a question of law, this decision is reviewed for correctness. *Id.* at 1000.

## ANALYSIS

### Nature of the Employment Contract

There is a presumption in Utah "that any employment contract which has no specified term of duration is an at-will relationship." *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989). In an at-will relationship, both the employer and the employee are free to terminate the relationship at any time. *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 53 (Utah 1991) (citing *Bihlmaier v. Carson*, 603 P.2d 790, 792 (Utah 1979)).

---

**2.** In view of our disposition, we do not reach the alternative basis for the trial court's decision or Evans's argument on appeal that the economic reasons given by GTE did not constitute just cause for his termination.

**3.** Given Evans's view of his case, his theory may actually be more one of express contract, a distinction which has no bearing on our analysis.

A discharged employee may rebut this presumption that an employment contract is "at-will" by a showing that "the parties expressly or impliedly intended a specified term or agreed to terminate the relationship for cause alone." *Berube*, 771 P.2d at 1044. Evidence of this intention can take the form of "employment manuals, oral agreements, and all circumstances of the relationship which demonstrate the intent to terminate only for cause or to continue employment for a specified period." *Id.* In determining whether an implied contract has been created, the Utah Supreme Court has stated,

> [F]or an implied in fact contract term to exist, it must meet the requirements for an offer of a unilateral contract. There must be a manifestation of the employer's intent that is communicated to the employee and sufficiently definite to operate as a contract provision. Furthermore, the manifestation of the employer's intent must be of such a nature that the employee can reasonably believe that the employer is making an offer of employment other than employment at will.

*Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991).

■ Evans has identified four "manifestations" of GTE's intent that he argues created an implied contract.[4] He was told during the interviewing process:

1. During his first year he would need to focus on building client relationships.
2. There would not be pressure to close significant sales his first year due to the length of the sales cycle.
3. He would not be expected to close significant sales until the end of 1990 or early 1991.
4. He could be terminated if he failed to close sales by the end of 1990, unless he had sales ready to close by the first or second quarter of 1991.

In addition, Evans was assured that his employment would be a long-term relationship, and was promised a promotion after he sold his first system. Evans concludes from these manifestations that his employment contract was intended to have a term extending at least through 1990.

■ After assessing these alleged manifestations of intent, we agree they are inadequate to create an implied contract. With respect to GTE's assurances of long-term employment, and possible promotions, "[g]eneral expressions of long term employment or job advancement do not convert an at-will employment contract to a termination only for cause contract." *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev.1989) (executive management told Vancheri he would have a "long and successful association" with the GNLV family). In a somewhat similar case, *Sullivan v. Snap-on Tools Corp.*, 708 F.Supp. 750, 751 (E.D.Va.1989) (*aff'd*, 896 F.2d 547 (4th Cir.1990)), plaintiff testified he was told by those in authority that "as long as he performed his duties to Snap-on's satisfaction, he would be afforded job security." The court found that these oral assurances expressed merely an optimistic hope regarding their future association, and that "mere oral promises or assurances of job security are insufficient to rebut an at will presumption." *Id.* Thus, general assurances of an ongoing working relationship are not sufficiently definite so as to rebut the at-will presumption.

As for the assurances that Evans would not have to close sales until the end of 1990 or the beginning of 1991, these sorts of comments fall more into the category of general job description than binding manifestations of the employer's intent to enter into a contract for a specified time period. GTE was basically explaining the length of the sales cycle to Evans so that he would know that GTE did not expect him to immediately begin to close sales and that GTE would not be concerned about his sales

---

4. For the first time on appeal, Evans also claims that these manifestations raise the issue of promissory estoppel. He alleges that he reasonably relied upon this promise of employment for at least a year to his detriment, and therefore, GTE should be estopped from denying the existence of its agreement. While we note that Evans has not raised this issue in a timely manner, the doctrine of promissory estoppel has no relevance in this case, given our determination that no promise or implied contract was made to employ Evans for a specified time period.

record until late 1990 or early 1991. If this court were to perceive an implied contract to employ Evans for a definite time period based upon these representations, then an employer could never tell a potential employee in a job interview what was expected of him or her over the next few months or years without creating such a contract. Implying a contract on this basis would impermissibly undercut the presumption that employment contracts are at-will.

Alternatively, even viewing the facts most favorably to Evans, and assuming that GTE did promise Evans that he would not be terminated before the end of 1990 on the basis of inadequate sales, it is important to bear in mind the "narrowness of the implied-in-fact contract term that [the discharged employee's] allegations would support." *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 307 (Utah 1992). In *Sanderson*, plaintiff was allegedly promised that he would not be discharged for being unable to work due to an illness. The court noted, however, that the employer "retained his at-will prerogative to fire Sanderson at any time for any *other* reason." *Id.* (emphasis in original). In Evans's case, a promise to give him until late 1990 or early 1991 to close sales would mean, at most, that GTE could not fire Evans in the summer of 1990 based solely upon his sales record. Following the reasoning in *Sanderson*, Evans could not expand this promise to bar termination on other grounds, including GTE's decision to discontinue the IBM program. In all other respects, the employment relationship between Evans and GTE would remain at-will.

### CONCLUSION

The trial court correctly ruled that no reasonable jury could find that Evans and GTE entered into an implied employment contract for a specified duration of time. For this reason, we affirm the trial court's grant of summary judgment to GTE.

GARFF and ORME, JJ., concur.