Patricia J. KIRBERG, Plaintiff
and Appellant,

v.

WEST ONE BANK, Defendant
and Appellee.

No. 920706–CA.

Court of Appeals of Utah.

April 1, 1994.

Daniel F. Bertch (Argued), Salt Lake City, for appellant.

Elizabeth T. Dunning, Carolyn Cox (Argued), Watkiss, Dunning, & Watkiss, Salt Lake City, for appellee.

Before DAVIS and JACKSON, JJ., and GARFF [1], S.J.

GARFF, Senior Judge:

Appellant Patricia Kirberg appeals a summary judgment in favor of appellee West One Bank in which the court determined Kirberg had produced insufficient facts to create a jury question as to whether the parties' at-will employment relationship had been modified by West One's subsequent representations and conduct. We affirm.

## FACTS

Because this is an appeal from a summary judgment, we view the facts and all reasonable inferences drawn therefrom in a light most favorable to Kirberg, the nonmoving party. *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 304 (Utah 1992); *accord Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 999–1000 (Utah 1991). Here, the facts con-

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78–3– 24(10) (1992).

sist of several employment documents and Kirberg's allegations.

West One hired Kirberg in October 1988 as a bank teller. West One's application form, signed by Kirberg contained the following disclaimer:

> I understand and agree that if I am employed by Moore Financial Group [the predecessor of West One] or any of its related companies or subsidiaries (the "company"), that I may resign or be discharged at any time without notice and without cause. I understand no company representative has any authority to enter into an agreement with me different or contrary to the foregoing. I also understand that if I accept employment, there is no express or implied employment contract between me and the company.

This disclaimer was printed in the same size and type of printing as all other writing on the form. Kirberg signed the form, certifying she understood that the foregoing would be the terms under which any offer of employment would be made.

West One also maintained a document entitled "West One Human Resource Manual," to which Kirberg had access. This manual contained the following disclaimer:

> Adherence to the policies and guidelines contained in this Code of Conduct [within the Manual] do not constitute an expressed or implied employment contract between the Company and its employees. All employees may resign or be discharged at any time without notice and without cause. No West One representative has any authority to enter into an agreement with any West One employee contrary to the foregoing.

In spite of these written disclaimers, Kirberg alleges that she never read the disclaimer, it was never read to her, it was never referred to in her employment interview, and she was never told she could be fired without cause.

This manual also provided for "disciplinary actions," and in this regard stated: "Depending on the severity of the problem, disciplinary action may result in progressive discipline, a negotiated voluntary separation, or immediate involuntary separation."

During 1990, portions of the manual, including the provision set forth above, were incorporated into a separate booklet titled "Code of Conduct." Kirberg received a copy of this manual and signed a statement acknowledging she had read it.

In February 1989, Kirberg was promoted from teller to branch manager of the West Jordan branch. Kirberg never received any substandard employee reviews. Part of her duties included employee discipline. Based on her observations, she assumed that any discipline should be at the lowest level necessary to correct the problem, and that all disciplinary problems and actions should be documented. Kirberg believed company policy was that an employee should not be fired without cause. In two instances where Kirberg wished to terminate an employee, she was told by a superior that she must first counsel the employee and warn him or her.

In late 1990, Kirberg heard a rumor that Dr. Robert Davis, a medical doctor with substantial deposits at West One, and a substantial existing loan, had been charged with rape and Medicaid fraud. Kirberg believed these legal problems were several years old and had been resolved. Kirberg checked Davis's loans and determined they were all current.

In 1991, Davis sought another loan from West One. Kirberg referred Davis's loan application to a loan officer for review and approval. Kirberg later learned the FBI was investigating Davis. Kirberg called the loan officer, telling him she believed the FBI was investigating Davis, and therefore he should be cautious in deciding whether to approve the loan.

Once West One confirmed Davis was being investigated by the FBI, it fired Kirberg for failing to report in late 1990 what she had heard about Davis's legal problems.

## SUMMARY JUDGMENT

■ The issue here is whether the parties had an implied-in-fact employment contract rather than the presumed at-will relationship. This issue is primarily one of fact. *Johnson v. Morton Thiokol, Inc.*, 818 P.2d

997, 1001 (Utah 1991). However, if the evidence is such that no reasonable jury could conclude that the parties agreed to limit the employer's right to terminate the employee, then the issue is one of law and appropriate for summary judgment. *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 306 (Utah 1992); *Johnson*, 818 P.2d at 1001. "Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Sanderson*, 844 P.2d at 306. We review for correctness a summary judgment and do not defer to the trial court. *Id.*; *Evans v. GTE Health Sys., Inc.*, 857 P.2d 974, 976 (Utah App.), *cert. granted*, 868 P.2d 95 (Utah 1993).

## AT-WILL EMPLOYMENT

We consider whether the court erred in determining as a matter of law that Kirberg did not present evidence sufficient to create a jury question as to whether West One modified its at-will employment relationship to that of an implied-in-fact employment contract.

> The relationship of employer and employee is a product of mutual assent expressed by an employer's offer of employment and an employee's acceptance. When an employment agreement mentions no period of duration, employment is presumed to be at will. A plaintiff/employee may overcome this presumption by showing that the parties created an implied-in-fact contract, modifying the employee's at-will status.

*Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 333 (Utah 1992) (citations omitted); *accord Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 307 (Utah 1992) (at-will employment is bundle of different privileges, any of which employer can surrender through oral agreement).

■ In determining whether the parties created an implied-in-fact employment con-

tract, relevant evidence includes written policies, bulletins, handbooks, and the employer's conduct and oral disclosures. *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 56 (Utah 1991). *But see Hodgson*, 844 P.2d at 334 (supreme court has never held that employer's conduct and oral disclosures alone could create implied-in-fact employment contract).

■ However, where "an employee handbook contains a clear and conspicuous disclaimer of contractual liability, any other agreement terms must be construed in light of the disclaimer." *Id.*; *accord Sanderson*, 844 P.2d at 306; *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1003 (Utah 1991). Still, disclaimers can later be modified by expressed or implied agreement. *See Perry v. Sindermann*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (employer's de facto and written policies may create employment contract even where policy manual states the contrary).

■ Where the evidence that an at-will relationship has been modified consists of employer conduct, there must be

> a manifestation of the employer's intent that is communicated to the employee and sufficiently definite to operate as a contract provision. Furthermore, the manifestation of the employer's intent must be of such a nature that the employee can reasonably believe that the employer is making an offer of employment other than employment at will.

*Id.* at 1002 (citations omitted).[2]

## UNDISPUTED FACTS

Kirberg claims she has raised a jury question as to whether the parties modified the at-will employment contract. She states that her observations and training led her to believe that a manager should fully document employee problems, that discipline should be progressive, and that an employee could not be fired arbitrarily or without cause.[3] These

---

2. In order for conduct and oral statements to establish an implied-in-fact contract, "such evidence must be strong enough to overcome the presumption of at-will employment and any inconsistent written policies and disclaimers." *Hodgson*, 844 P.2d at 334.

3. We do not consider Kirberg's claims regarding her interpretation of the manual because an implied-in-fact employment contract cannot be construed from the content of an employee handbook where "an employee handbook contains a

facts are not disputed and we view them in the light most favorable to Kirberg's position. However, Kirberg's facts do not create a genuine issue as to any material fact as required by Utah Rule of Civil Procedure 56(c).

█ She relies solely on "her understanding" and "what she was taught." She does not point to affirmative and definite acts of West One demonstrating West One's intent to modify its at-will contract with her. Thus, she has not raised a jury question as to whether West One nullified its disclaimer and affirmatively offered her employment on terms different from the initial at-will contract.[4] *See Sanderson,* 844 P.2d at 306; *Johnson,* 818 P.2d at 1002. Accordingly, West One is entitled to judgment as a matter of law.

We therefore affirm the summary judgment.

DAVIS and JACKSON, JJ., concur.

clear and conspicuous disclaimer of contractual liability." *Hodgson,* 844 P.2d at 334.

4. Kirberg also raises a claim of breach of the implied covenant of good faith and fair dealing.

We cannot construe such a covenant to create a for-cause component in an at-will relationship. *Hodgson,* 844 P.2d at 335; *Sanderson,* 844 P.2d at 308; *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 55 (Utah 1991).