Lawrence Scott ROBERTSON,
Plaintiff and Appellant,

v.

UTAH FUEL COMPANY, Defendant
and Appellee.

No. 940147–CA.

Court of Appeals of Utah.

Feb. 7, 1995.

John L. Black, Jr., Salt Lake City, for appellant.

Jathan W. Janove, and Monica Whalen Pace, Janove & Associates, Salt Lake City, for appellee.

Before Judges BENCH, BILLINGS, and JACKSON.

## OPINION

BILLINGS, Judge:

Lawrence Scott Robertson (Robertson) appeals from a grant of summary judgment in favor of appellee Utah Fuel Company (Utah Fuel). On appeal, Robertson argues that a material issue of fact exists as to whether he had an implied-in-fact employment contract with Utah Fuel. Further, Robertson contends the trial court erred when it determined as a matter of law that Utah Fuel's actions did not constitute intentional infliction of emotional distress. We affirm.

## FACTS

Robertson worked for Utah Fuel for ten years, from 1981 to July 28, 1991. Robertson began his employment at Utah Fuel as a laborer, but was soon promoted to a foreman position. On November 25, 1990, Robertson was chosen to serve as senior surface foreman—the position he held when he was terminated in July 1991.

In the summer of 1987, Utah Fuel adopted and distributed to its employees, including Robertson, the Utah Fuel Company Employee Handbook (employee handbook). As a supervisor, Robertson followed the handbook in dealing with his crew.

During his employment at Utah Fuel, Robertson developed an addiction to cocaine and alcohol. In June 1990, following an incident at the mine involving Robertson and another employee, Glen Zumwalt (Zumwalt), Vice President and General Manager of Utah Fuel, asked Robertson if he had a drug or alcohol problem. Following Robertson's negative response, Zumwalt informed Robertson that if he ever did develop any "problems" while working at the mine he should come forward to seek help. He suggested that Utah Fuel's medical plan would cover at least a portion of drug- or alcohol-related treatment.

On May 8, 1991, before informing anyone at Utah Fuel, Robertson enrolled himself in a twenty-eight-day inpatient drug and alcohol treatment program. On that morning, Robertson phoned his immediate supervisor, William Shriver (Shriver), and told him that he would not be reporting for his shift because he was seeking treatment for his drug and

alcohol addiction. Robertson used accumulated sick leave during the month that he was in treatment. While he was in the hospital, Robertson had several phone conversations with Shriver. During one of those conversations, Shriver told Robertson, "Don't worry about a thing. Get your problem taken care of." During this time, however, Shriver and other management were evaluating Robertson's position at the mine.

Sometime after Robertson's admittance to the hospital, but before his return to the mine, Utah Fuel amended the drug and alcohol policy that appeared in the employee handbook and issued the "Approved Policy on Alcohol, Drugs and Controlled Substances" (drug policy). In pertinent part this policy clarified Utah Fuel's position regarding voluntary admissions of substance abuse, and provided that medical coverage would be available to all eligible employees who voluntarily came forward to seek treatment.

When Robertson returned to work, he was directed to speak with Zumwalt, who informed him that he had been demoted to "A-pay Fire Boss," a position working underground and carrying a twenty-five percent pay cut. Robertson responded that he would not accept that position. Zumwalt contacted Utah Fuel's parent company and the next day offered Robertson his old job. Robertson, however, was required to meet individually with each of his crew members to discuss their concerns about him.

During Robertson's absence, and following his return, rumors circulated throughout the mine about his drug and alcohol addiction. Subsequently, Robertson's supervisors began receiving complaints regarding Robertson's work. Several of the employees Robertson supervised suggested that he should be demoted and forced to work his way up the ladder again.

On July 26, 1991, approximately six weeks after returning to work, Zumwalt again informed Robertson that he was being demoted to A-pay Fire Boss. Robertson refused to accept the demotion and was therefore terminated.

Robertson filed suit. The trial court granted Utah Fuel's motion for summary judgment, concluding that the undisputed facts established that Robertson's employment was at will. The trial court also rejected Robertson's claims for intentional infliction of emotional distress. Robertson appeals.

## I. IMPLIED–IN–FACT EMPLOYMENT CONTRACT

Robertson claims he should be able to present to the fact finder his claim that he had an implied-in-fact employment contract that precluded Utah Fuel from discharging him absent good cause. First, he claims that Utah Fuel's drug policy established an implied-in-fact contract term that any employee who voluntarily came forward to seek drug and alcohol treatment would not be disciplined. Second, Robertson maintains that the employee handbook established an implied-in-fact contract term that he would not be disciplined absent good cause and in compliance with Utah Fuel's four-step disciplinary procedure.

▉ Whether the parties had an implied-in-fact employment relationship is a question of fact. *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001 (Utah 1991). "However, if the evidence is such that no reasonable jury could conclude that the parties agreed to limit the employer's right to terminate the employee, then the issue is one of law and appropriate for summary judgment." *Kirberg v. West One Bank*, 872 P.2d 39, 41 (Utah App.1994) (citing *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 306 (Utah 1992)).

### A. Review of Utah Employment Law

In the seminal case of *Berube v. Fashion Centre Ltd.*, 771 P.2d 1033 (Utah 1989), the Utah Supreme Court undertook a sweeping analysis of the at-will employment doctrine. The plurality opinion described the at-will rule as "merely a rule of contract construction and not a legal principle." *Id.* at 1044 (citing *Pine River State Bank v. Mettille*, 333

N.W.2d 622, 628 (Minn.1983)). The court stated that "[t]his presumption can be overcome by an affirmative showing by the plaintiff that the parties expressly or impliedly intended a specified term or agreed to terminate the relationship for cause alone." *Id.* The court held that evidence of an express or implied contract term may consist of "employment manuals, oral agreements, and all circumstances of the relationship which demonstrate the intent to terminate only for cause or to continue employment for a specified period." *Id.* The court made clear, however, that "[a]n implied-in-fact promise cannot, of course, contradict a written contract term." *Id.*

After a series of decisions following *Berube,* the supreme court again clarified this area of law in *Johnson v. Morton Thiokol, Inc.,* 818 P.2d 997 (Utah 1991). *Johnson* applied a unilateral contract analysis, requiring "a manifestation of the employer's intent that is communicated to the employee and sufficiently definite to operate as a contract provision" such that "the employee can reasonably believe that the employer is making an offer of employment other than employment at will." *Id.* at 1002 (footnotes omitted).

Finally, the Utah Supreme Court in *Sanderson v. First Sec. Leasing Co.,* 844 P.2d 303 (Utah 1992), clarified when, if ever, an employer's oral statement may modify an at-will employment relationship. In *Sanderson,* the plaintiff, who was suffering from a serious illness of unknown origin, was told by his employer to " 'take all the time ... needed, do what needed to [be] done. When [he] was ready to come back the job would be there.' " *Id.* at 305. When the plaintiff returned to work, he was informed that his supervisor was disappointed in him and was told that he must accept a demotion or be terminated. Plaintiff chose termination. The employee handbook explicitly provided that employment was at will; that employees could quit or be fired at any time for any reason; and that where employee behavior warranted it, immediate termination was possible. Following his termination, the plaintiff sued, alleg-

ing that his employer breached its oral assurances that the job "would be there" when plaintiff was ready to return to work.

The court rejected the employer's argument that oral statements cannot rebut the at-will presumption. It noted that "[a]t-will employment is a bundle of different privileges, any or all of which an employer can surrender through an oral agreement.... [A]n employer can, for example, agree to use a certain procedure for firing employees or promise not to fire employees for a certain reason, thereby modifying the employee's at-will status." *Id.* at 307. On this basis, the court concluded that if the employer made the alleged statements regarding the plaintiff's job in light of his illness, a jury could find the statements to be neither "vague encouragement nor hyperbolic optimism," *id.,* and thus insufficient to modify the plaintiff's at-will status.

In sum, there is a presumption in Utah "that any employment contract which has no specified term of duration is an at-will relationship." *Berube,* 771 P.2d at 1044. An employee may rebut this presumption by demonstrating a manifestation on the part of the employer, communicated to the employee and sufficiently definite to induce a reasonable belief that employment is other than at will. *Johnson,* 818 P.2d at 1002. Finally, evidence of the employer's intention to modify the at-will relationship may include employee handbooks, company manuals, bulletins, oral statements, and the employer's course of conduct. *Id.; Berube,* 771 P.2d at 1044.

## B. Utah Fuel's Drug Policy

We now examine Robertson's claims in light of the previous authority. First, Robertson contends that the drug policy established an implied-in-fact contract term that Robertson would not be demoted, terminated, or otherwise punished for voluntarily coming forward to seek treatment for his substance abuse problem. In addition to this written policy, Robertson relies upon his June 1990 conversation with Zumwalt; the

fact that other Utah Fuel employees had been allowed to obtain alcohol-related treatment and subsequently return to the same job at the same rate of pay; and the verbal assurances he received from Shriver while in treatment.

Prior to Robertson's entering the hospital for treatment the employee handbook policy on substance abuse provided, in part:

It is the Company's policy to maintain a safe, productive working environment for everyone and to safeguard company property.

. . . .

The Company may request that an individual, at any time, provide a urine or blood sample under appropriate supervision to determine compliance with this policy. A refusal to give a sample, or a refusal to assist the Company in its investigation of suspected violations, *may give rise to presumption [sic] of a violation of this policy. An employee who violates or refuses to comply with this policy may be disciplined, up to, and including discharge.*

(Emphasis added.) This policy was amended in the summer of 1991 and was circulated to Utah Fuel employees during Robertson's absence. Robertson did not know about the written policy amendments until he returned to work in June. Zumwalt and Shriver testified that the policy was amended merely to clarify the long-held belief that employees who voluntarily came forward should be assisted in obtaining rehabilitative assistance and that Utah Fuel's employee insurance plan would cover a portion of such treatment. In relevant part, the amended policy provides:

Any violation of this policy, or a refusal to submit to search or test may result in disciplinary action, up to and including immediate discharge. For purposes of this policy, a confirmed positive test result will be deemed a violation.

While it is the goal of the Company and this policy to ensure a safe, productive work environment for everyone, it is also the Company's desire to help any employee who has a substance abuse problem to resolve that problem before they are found in violation of this policy. *Accordingly, any employee who voluntarily comes forward prior to a Company initiated test to request help in resolving an alcohol, drug or substance abuse problem will be offered rehabilitation assistance.* Requests for such help will be treated confidentially and may be made through the supervisor, local employee relations representative, Company medical representative or the Corporate Employee Relations Office. *Some financial assistance for treatment of substance abuse is presently available through the Company provided medical plan.*

(Emphasis added.)

■ We agree with the trial court that this policy could not have been reasonably understood by Robertson to be an offer to change his employment to something other than at will. The policy does not guarantee that any employee who voluntarily comes forward to seek treatment will not be demoted, terminated, or punished for their substance abuse. On its face, the policy provides only that rehabilitative assistance is available to employees who seek it. The only "promise" that could reasonably be divined from this policy is that rehabilitation will be provided, and at least partially paid by, Utah Fuel's insurance plan.

■ Alternatively, Robertson contends that he received oral assurances, both before and after he began his treatment, that Utah Fuel would not demote or terminate him for voluntarily admitting his drug addiction. He relies upon Zumwalt's statements that Utah Fuel would help employees with substance abuse problems and that "he would be willing to help" Robertson if he came forward and acknowledged his problem. However, this statement is not a clear and definite promise that Robertson would not be disciplined for his addiction. The assurances were general in nature and made no reference, however

slight, to continued employment or job status. In making these statements, Zumwalt did not "communicate the intent to offer employment other than at-will ... such that [Robertson] may reasonably believe that the employment offered is other than at-will." *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 334 (Utah 1992).

The statements of Robertson's immediate supervisor, Shriver, fail for the same reasons. Viewed in a light most favorable to Robertson, the statements "Don't you worry about a thing. Get your problem taken care of," and "Goddamnit, don't you be leaving. Stay in there," constitute, at best, "vague encouragement" and "hyperbolic optimism," which is insufficient to convey a clear and unequivocal intention to relinquish the right to terminate at will. *See Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 307 (Utah 1992).

### C. The Employee Handbook and Progressive Discipline

Next, Robertson contends the disciplinary procedures set forth in the employee handbook raise a factual question regarding whether Robertson rebutted the at-will employment presumption.

Robertson maintains that since 1987 Utah Fuel has followed a four-step disciplinary procedure prior to demoting or terminating any employee, except in cases of "flagrant violations of normally acceptable behavior," which "may require by-passing one or more steps." Among other arguments, Utah Fuel responds that the procedures do not apply to demotions.[1] We agree.

Utah Fuel contends that the uncontradicted evidence reveals that the progressive discipline policy did not apply to demotions and Robertson's reliance upon this provision is therefore misplaced. They insist that Robertson was not discharged in July 1991; instead, he was demoted to A-pay fire boss, whereupon Robertson elected to quit.[2] Utah Fuel maintains that by its plain language, the disciplinary procedures apply only to terminations.

We look to the plain language of the policy to determine the proper import of the disciplinary guidelines.[3] In relevant part, Step

---

1. Utah Fuel also contends that the procedures did not apply to supervisors; that the discipline procedure constitutes merely a general policy statement with no clear or definite promises regarding how employees will be treated; and that Utah Fuel disclaimed any contractual relationship in the employee manual. Because we resolve this case on the demotion issue, we do not reach Utah Fuel's remaining contentions.

2. Robertson's counsel did not argue below, nor brief on appeal, that Robertson was constructively discharged when Utah Fuel demoted him to A–Pay fire boss.

3. These procedures provide in full, with our emphasis:

   STEP ONE: If there is a problem with your workmanship, safety, attendance, relationships with others or other similar matters, your supervisor *will discuss the problem with you.* This will be a private explanation of what is and/or is not acceptable and why. You will be encouraged to discuss your understanding of the problem and plans to correct or improve the situation. A written record to go in your personnel file will not normally be part of the first discussion unless the problem is of an immediately serious nature.

   STEP TWO: If the problem is not corrected or if another significant problem arises shortly after the first discussion, a second discussion is called for. This will be done in the same serious but nonthreatening way as the first, and will include a reference to the previous problem. The second reminder should, like the first, solicit a commitment from you to correct the problem. The second reminder will be followed up by a written statement from you as to how you will correct the problem, which will go into your file. If Step Two is successful, you can request that the written record be removed from your file after six (6) months or some other agreed upon period of time.

   STEP THREE: If the action taken in Step Two does not correct the problem(s), your supervisor will take you aside and, with your department head, have a third discussion regarding your failure to correct the situation. Unless some extenuating circumstance or fact is uncovered in this discussion, normally *you will be told to take off the rest of the shift. You will be instructed to go home and decide whether you can, or want, to continue to work here.* This, of course, would mean working by the rules and/or achieving at least an acceptable standard of performance. You will be told to re-

Four states, with our emphasis: "If Step Three does not correct the problem, *termination will result....*" If the four-step procedure was meant to apply equally to demotions or other forms of discipline, Utah Fuel would have expressly so provided. Moreover, we find no other language in the disciplinary guidelines that refers to demotions. In fact, the plain language supports our determination that the policy applies only to termination.

▮ Robertson counters that it was his understanding, as well as that of his immediate supervisor, that Utah Fuel could not demote an employee without first following the procedures set forth in the handbook. In part, Robertson relies on Shriver's testimony that it was his "opinion" that the policies should be applied to demotions just as terminations, and that he "believed" that to be Utah Fuel's policy as well. Robertson does not rely on specific policies, discussions, or directions regarding his belief that the four-step disciplinary procedures applied to demotions. We conclude this unsupported opinion testimony does not rebut the plain language of the handbook, nor do we find any other language in the handbook that suggests that it should.[4] We therefore conclude that Utah Fuel had no obligation to allow Robertson the benefit of its progressive disciplinary procedures before demoting him in July 1991, and affirm the trial court's grant of summary judgment.

port your decision at the beginning of the next regularly scheduled shift.
*If you decide to continue your employment,* the supervisor will sit down with you and have you make a plan for improvement and correction. This plan should identify the specific problems which led to the Step Three discussion and suspension.
This plan must be specific about the problem and how it can be corrected. The plan may require your supervisor or staff support. This plan must be written by you and signed by you and your supervisor. This plan will be placed in your permanent record and will stay there for 12 months or some other agreed upon time period. If this step is successful, you may request the written record be removed at the end of that time period.
STEP FOUR: *If Step Three does not correct the problem, termination will result* because of your inability or unwillingness to bring your behavior and/or performance up to the mini-

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, Robertson claims the trial court erred in granting summary judgment in favor of Utah Fuel on his claim of intentional infliction of emotional distress.

The Utah Supreme Court recognized a cause of action for intentional infliction of emotional distress

> where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

*Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344, 347 (1961).

▮ Robertson contends that by demoting and then terminating him and by requiring him to confess his drug addiction to his employees, he experienced extreme humiliation and anxiety and therefore has a claim for intentional infliction of emotional distress. " '[M]ere discharge from employment,' " however, "does not rise to the level of outrageous or intolerable conduct by an employer." *Dubois v. Grand Central,* 872

mum standards which the Company expects from all employees.
While the above steps will be followed in most routine situations, flagrant violations of normally acceptable behavior may require bypassing one or more steps.

**4.** "Unsubstantiated opinions and conclusions" are insufficient to defeat a motion for summary judgment. *Treloggan v. Treloggan,* 699 P.2d 747, 748 (Utah 1985); *see also Branson v. Price River Coal Co.,* 627 F.Supp. 1324, 1332 (D. Utah 1986) (stating conclusory, speculative or unsubstantiated assertions will not suffice to defeat summary judgment motion), *aff'd* 853 F.2d 768 (10th Cir. 1988); *Winter v. Northwest Pipeline Corp.,* 820 P.2d 916, 919 (Utah 1991) ("Allegations of a pleading or factual conclusion of an affidavit are insufficient to raise a genuine issue of material fact.").

P.2d 1073, 1078 (Utah App.1994) (quoting *Sperber v. Galigher Ash Co.,* 747 P.2d 1025, 1028 (Utah 1987)); *accord Larson v. SYSCO Corp.,* 767 P.2d 557, 561 (Utah 1989). "Undoubtedly, every employee who believes he has a legitimate grievance concerning his discharge from employment experiences some emotional anguish as a result of that belief." *Sperber,* 747 P.2d at 1029. The mere fact that Robertson was discharged, coupled with the fact that he was purportedly required to discuss his drug addiction with his subordinates, does not rise to the level of outrageousness or intolerable conduct necessary to establish a prima facie claim of emotional distress.

We therefore affirm the trial court's summary judgment on this claim.

### CONCLUSION

We conclude that neither Utah Fuel's drug policy nor the verbal assurances made by Robertson's supervisors, before or during treatment, rebut the presumption that Robertson's employment was at will. Furthermore, we conclude that Utah Fuel's progressive disciplinary procedures apply to terminations, not demotions. Finally, we conclude that Utah Fuel's actions in demoting Robertson did not constitute intentional infliction of emotional distress. We therefore affirm the trial court's grant of summary judgment in favor of Utah Fuel.

BENCH and JACKSON, JJ., concur.