**David MATTHEWS, Plaintiff,**

v.

**KENNECOTT UTAH COPPER CORPORATION,**
**Defendants.**

**No. 2:97 CV 549B.**

United States District Court,
D. Utah,
Central Division.

May 26, 1999.

Clayne Corey, Salt Lake City, UT, for plaintiff.

Elisabeth Blattner, Salt Lake City, UT, David Anderson, Salt Lake City, UT, for defendant.

## MEMORANDUM OPINION ORDER

BENSON, District Judge.

### I. INTRODUCTION

This matter comes before the Court on defendant's motion for summary judgment. The plaintiff is David Matthews, a former employee of the defendant, Kennecott Utah Copper Corporation. Plaintiff's complaint alleges eight causes of action: (1) Disability Discrimination; (2) Retaliation; (3) Wrongful Discharge in Violation of Public Policy; (4) Breach of Contract; (5) Breach of the Covenant of Good Faith and Fair Dealing; (6) Intentional Infliction of Emotional Distress; (7) Negligent Supervision; and (8) Defamation. These claims arise from Mr. Matthews' belief that he was transferred, demoted, denied jobs, and finally terminated because he suffered from a learning disability. Plaintiff stipulated to the dismissal of his second, third, and eighth causes of action. The defendant has moved for summary judgment on the five remaining claims. Defendant Kennecott claims that the plaintiff did not file his disability discrimination claim on time and that his four remaining claims, four through seven, are preempted by federal law, specifically Section 301 of the Labor Management Relations Act. Additionally, defendant asserts that the sixth cause of action for intentional infliction of emotional distress fails on the merits and the seventh cause of action is barred by the exclusive remedy provision of the Utah Workers' Compensation Act.

### II. FACTUAL BACKGROUND

Kennecott hired David Matthews in 1969. Matthews held various positions throughout his employment at Kennecott, including track gang member, shop sweeper, pitman, repair gang machinist, brakeman, locomotive engineer, tankhouseman, switchman on the low line, cleanup on the concentrator, and mobile shop sweeper at the mine. Matthews' personnel file shows that he had a history of excessive absenteeism and tardiness. From 1970 to 1993, his personnel file contained nine notices of disciplinary action for excessive absenteeism and tardiness, one suspension letter for excessive tardiness and failure to report-off properly, one notification letter that he was presumed to have quit due to his failure to properly report-off and to keep Kennecott properly informed of his condition, and three letters placing him on probation for excessive absenteeism and/or tardiness. Matthews does not dispute receiving these letters.

Matthews was a member of a labor organization throughout his entire employment at Kennecott. In 1986, the various unions at Kennecott entered into a single collective bargaining agreement with Kennecott. A new agreement was negotiated in 1990 and then again in 1993. The collective bargaining agreements governed all union employees during their effective periods. The collective bargaining agreements clearly set out the procedures available to an employee or the Union on his behalf for addressing disputes. Other provisions included Kennecott's right to require any employee to submit to a medical evaluation, Kennecott's right to determine employee qualification for specific jobs and Kennecott's right to make reasonable rules and regulations as long as they did not conflict with the Master Agreement.

Matthews does not dispute that he was familiar with the collective bargaining agreements but disputes the fact that he understood the agreements. Although he did read most of the agreement, the plaintiff asserts that a psychological problem, diagnosed by Dr. Samuel Goldstein, precluded him from understanding the agreement and that the agreement covered his employment. Plaintiff claims that Dr. Goldstein's report concluded that Matthews' condition resulted in an inability to understand the facts and circumstances of his employment. However, plaintiff did admit in his deposition that he understood that he was covered by the agreements and that if he had any questions regarding the agreement he could speak to his union representative.

Kennecott also has a code of conduct governing how employees should generally conduct themselves. Matthews received a copy, which he signed, in February 1987. Employees who do not conform to the general code of conduct will be subject to discipline. Matthews disputes the fact that he understood the code of conduct or understood that violations would constitute just cause for termination. However, Matthews admitted in his deposition that he understood that, as a Kennecott employee, it was his duty to comply with the general code of conduct.

For the purpose of defendant's motion, the most relevant portion of Matthews' employment began in approximately 1990, when he started the job of switchman on the low line. He held that position from approximately 1990–1993. While at this position, he continued to have problems with absenteeism and tardiness. Around May 6, 1993, Kennecott informed the plaintiff that he was being placed on strict disciplinary probation as a result of his excessive absenteeism and/or tardiness. On his last night as a switchman, the train cars kept coming uncoupled and the job took too long to do. Others on the shift kept asking Matthews "What the hell's the matter with you, can't you hear what we're saying," to which he replied "apparently I can't," and turned up the volume on the radio he was using for the job. As a result, Kennecott sent Matthews in for a hearing test. Matthews' supervisors also noted that he suffered from other problems that affected his productivity, including lack of attention, apathy, and an inability to follow instructions. They seemed concerned with Matthews as a person. Later, in the fall of 1993, Kennecott referred him to Dr. Goldstein for a psychological evaluation. No one at Kennecott ever discussed the results of the evaluation with Matthews.

After the switchman position, Matthews held a cleanup position at the Bonneville concentrator for six months, where he was paid switchman's wages as opposed to cleanup wages. While at the cleanup position, Kennecott's Ward Scroggin and Ken Harmon presented the plaintiff with the option of staying there, going back to the track gang, or going back to the mine. Matthews accepted a position at the mine as a shop sweeper. Scroggin and Harmon explained to Matthews that if he accepted the mine sweeper position he would go back to the mine and start his mine seniority, and from there could bid for a better position. Scroggin and Harmon also told Matthews that he needed to improve his absenteeism and tardiness. The defendant claims that Matthews understood that the procedure for granting bids would be based on his qualifications, past experience, hire date and seniority. Plaintiff's deposition supports that claim. He admitted that he understood the procedure for granting bids. However, plaintiff now denies what he understood based on the claim that his psychological condition limited his ability to understand his work environment.

Finally, Matthews was transferred to the position of mobile shop sweeper. He held that position from February 1994 until his termination. Matthews did submit bids for other jobs while he was working as a mobile sweeper operator. All of those bids were denied. Bid awards are made on the basis of seniority subject to the employee's physical fitness and qualifications for the job. Applications come in and then a list is posted showing the first group of employees to whom the job will be offered, in seniority order. Matthews recalls his name made it onto some bid lists and not others, but cannot recall any specific jobs on which his name did appear on the list and can only recall one on which he knows his name did not appear. He also recalls one time that he appeared third on the list and the job was offered to the fourth person on the list, but he cannot recall what the job was for or when it occurred. Matthews did raise this bypass situation with Union representative Greg Pollock who said he would look into it but

never got back to Matthews. Matthews did not pursue it further with the Union. Matthews asked a Kennecott clerk who was not responsible for the bypass situation decision to look into it for him but the clerk did not find out anything. Matthews did not go higher than the clerk internally at Kennecott to obtain more information about the bypass situation. The plaintiff did not have discussions with anyone else at Kennecott or the Union about why his other bids were denied. Matthews claims he may have filed a grievance on the brakeman bid but did not file any grievances concerning the other bid denials. He did not file a charge of discrimination with the UADD or EEOC concerning any of the bid denials. Matthews did not file a grievance with his union, Kennecott, the Utah Anti–Discrimination Division or the EEOC concerning the job transfers.

While working as a mobile shop sweeper, Matthews continued to have difficulty with excessive absenteeism and/or tardiness. On or about February 16, 1994, Kennecott again sent him a letter placing him on probation for excessive absenteeism and/or tardiness. The letter informed Matthews that he needed to prearrange absences with his supervisor and that he needed to provide documentation substantiating his inability to be at work if he could not prearrange the absence. On or about December 19, 1994, Matthews received a letter placing him on two-year probation. The probation governed the period from December 1994 to his last day at Kennecott.

Matthews received a letter terminating his employment on February 27, 1995. The defendant claims that Matthews understood from the letter that Kennecott had decided to terminate his employment. However, plaintiff disputes what he understood from the letter. Matthews' union filed a grievance on his behalf as a result of the termination. When Kennecott fired Matthews, the Union asked Kennecott if they could apply the Justice and Dignity provision of the Collective Bargaining agreement, which would allow plaintiff to remain employed until resolution of the Union's grievance filed on his behalf. Kennecott agreed. Matthews claims that since he was allowed to keep working at Kennecott, under the Justice and Dignity provision of the Collective Bargaining Agreement, it was his understanding that his employment would continue. Matthews kept working until July 11, 1995, when Kennecott rejected Matthews' termination grievance. Within 3 months after July 11, 1995, Matthews asked the Union to take his grievance to arbitration. They did not. On April 30, 1996, Matthews filed a charge of discrimination with the UADD. On May 6, the EEOC received the 4/30/96 charge of discrimination Matthews filed with the UADD. On May 7, 1996, the EEOC acknowledged its receipt of the Charge and its intention to investigate it.

After his termination from Kennecott, Matthews was arrested for driving under the influence of alcohol. Pursuant to a plea bargain agreement, he agreed to submit to counseling with Dr. Wilfred Higachi. Dr. Higachi was able to obtain a copy of Dr. Goldstein's evaluation. From that evaluation, Matthews learned of his disability. Plaintiff alleges that prior to meeting with Dr. Higashi, Matthews was unaware that he had any kind of psychological disability or mental illness. However, the plaintiff, in his own deposition, stated that he suspected he had failed Dr. Goldstein's psychological evaluation.

Plaintiff responded by filing this lawsuit against Kennecott alleging eight separate causes of action: (1) Disability Discrimination; (2) Retaliation; (3) Wrongful Discharge in Violation of Public Policy; (4) Breach of Contract; (5) Breach of the Covenant of Good Faith and Fair Dealing; (6) Intentional Infliction of Emotional Distress; (7) Negligent Supervision; and (8) Defamation. Plaintiff stipulated to dismissal of the second, third and eighth causes of action. Defendant has filed a motion for summary judgment to dismiss the remaining causes of action.

The following chart contains the relevant misconduct of the plaintiff and the disciplinary actions taken by Kennecott throughout plaintiff's employment.

### Matthews' Disciplinary Problems at Kennecott

| Date | Conduct | Action Taken |
|---|---|---|
| 1/27/70 | Excessive Absenteeism | Written warning |
| 12/28/73 | Excessive Absenteeism | Written warning |
| 2/17/77 | Failure to report-off work-resulting in a delay of production; Tardiness | Written warning; had previously been given a verbal warning about the tardiness. |
| 2/26/77 | Failure to report-off; impeding production | Written warning advising him that the matter was under investigation and a hearing was pending. |
| 3/15/77 | Repeated tardiness and failure to report-off | Three day disciplinary suspension. |
| 2/3/80 | Excessive Tardiness | Written warning |
| 2/24/81 | Excessive Absenteeism | Written warning advising him that the matter was under investigation and a hearing was pending. Probation |
| 10/16/89 | Excessive Absenteeism | Written warning |
| 6/4/90 | Excessive Absenteeism | One-year probation |
| 1/6/92 | Excessive Absenteeism/Failure to keep company apprised of condition | Received letter stating that he would bepresumed to have quit if he did not respond. |
| 5/6/93 | Chronic and Excessive Absenteeism | One-year probation |
| 9/14/93 | Excessive and Habitual Tardiness | Written Warning |
| 2/16/94 | Absenteeism and Tardiness | One-year probation |
| 12/19/94 | Absenteeism and Tardiness | Two-year probation |
| 2/27/95 | Matthews received termination letter | Termination of employment |
| 7/11/95 | Last day | Kennecott rejected Matthews' termination grievance |

### III. Issues Presented

I. Whether plaintiff's first cause of action should be barred for failure to exhaust his administrative remedies and failure to file his charge regarding his termination with the EEOC in a timely manner.

II. Whether the remaining causes of action, four through seven, are preempted by federal law under Section 301 of the LMRA, 29 U.S.C.A. § 185.

III. Whether the fourth cause of action, treated as an LMRA claim, should be dismissed because plaintiff did not exhaust his administrative remedies or file the termination claim on time.

IV. Whether the sixth cause of action for intentional infliction of emotional distress fails as a matter of law.

V. Whether the seventh cause of action is barred by the exclusive remedy provision of the Utah Workers' Compensation Act.

### IV. Conclusions in Short Form

I. Yes. Pursuant to Title VII requirements, plaintiff failed to file claims regarding job transfers or bid denials with the EEOC prior to bringing his ADA claim. In addition, he failed to file his termination claim in a timely manner. Title VII gives claimant 300 days after the employment action to file a claim. Plaintiff did not file his claim until 435 days after the termination decision. According to Utah case law, plaintiff cannot assert defenses of equitable estoppel or equitable tolling to toll the statute of limitations. There was no active deception of the plaintiff regarding procedural requirements.

II. Yes. All of the remaining causes of action are preempted by federal law because they all require interpretation of the collective bargaining agreement. In his opposition to the motion for summary judgment, plaintiff did not respond to this issue.

III. Yes. Plaintiff did not file any grievances concerning the job transfers or bid denials. His grievance concerning the termination action was not filed on time.

IV. Yes. According to Utah law, Kennecott's conduct was not outrageous.

V. Yes. Plaintiff's claim is barred by the exclusive remedy provision of the Utah Workers' Compensation Act. Because his injury is compensable under the Act, plaintiff is barred from bringing a separate negligence action.

### V. Analysis

#### A. First Cause of Action

■ Plaintiff's first cause of action alleges disability discrimination under the ADA for three employment actions: (1) job transfers (2) rejection of various bids and (3) his termination. Defendant argues that plaintiff's claim should be barred because he failed to file claims with the EEOC regarding the first two actions and the claim he filed regarding his termination was not timely filed. Actions for disability discrimination under the ADA are subject to the same administrative procedures as discrimination actions under Title VII. As a prerequisite to a lawsuit in federal court, a claimant must timely file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e). Matthews did not clear this hurdle with respect to any of the employment actions.

In states in which a state agency has authority to investigate employment discrimination (known as "deferral states"), Title VII requires claimants to file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e). Utah is such a state. Therefore, Matthews' disability claim is subject to the 300 day restriction. The United States Supreme Court has held that the 300 day limitations period begins to run from the time the challenged termination decision is made, not when the employee subsequently leaves work. *See Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) ("[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the act become most painful"). As a result, Matthews' charge of discrimination is untimely. Matthews' knew of Kennecott's decision to terminate him on February 27, 1995. He did not file his claim with the EEOC until May 6, 1996—435 days after the termination decision. Although he was allowed to keep working under the Justice and Dignity provision, he knew that he had been terminated. The grievance procedure did not toll the 300 day period. The Supreme Court specifically rejected that argument in *Ricks*.

■ Plaintiff responds that Kennecott should be estopped from asserting the statute of limitations and/or Matthews' failure to comply with administrative remedies because of its deliberate misconduct and bad faith. Specifically, plaintiff asserts that Kennecott's failure to respond to

Dr. Goldstein's report or provide Matthews access to that report constituted deliberate misconduct or bad faith, which enables plaintiff to assert the equitable defenses of estoppel or tolling. The plaintiff cites a Seventh Circuit case, *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir.1990), in support of his argument. In *Cada*, the court explained the importance of tolling the statue of limitations pending confirmation that the claimant had sufficient information to bring his or her claim. Plaintiff claims that he did not have sufficient information to bring a claim because the results of the psychological evaluation were not available to him. As a result, the statute was tolled until he learned of the disability.

However, the Tenth Circuit cases do not support plaintiff's argument that he can assert equitable tolling and estoppel as defenses. In the Tenth Circuit, an employee's cause of action accrues on the date the employer notifies the employee of the action. Once the action occurs, the employee has a duty to determine whether there was, in fact, a discriminatory motivation for the action. The employee need not learn of discriminatory motive before the statute begins to run. If that were the case, the 300 day period would have little meaning. *See Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir.1994). Plaintiff had a duty to discover if there was a discriminatory motive in this case.

 Further, the Tenth Circuit strictly construes what constitutes equitable tolling. The time limit will be tolled only if there has been active deception of the claimant regarding procedural requirements. *See Jarrett v. U.S. Sprint Communications Co.*, 22 F.3d 256, 260 (10th Cir.1994). Plaintiff cannot establish the elements needed to assert the equitable defense of tolling. Plaintiff in this case was not deceived regarding procedural requirements. Even if the defendants did conceal the report, it was not an attempt to deceive Matthews with regard to any procedural requirements. *See Hulsey 43*

*F.3d at 555.* An employer's failure to volunteer information about its reasons for employment actions is not "active concealment" of material information. *See Jarrett,* 22 F.3d at 260. Also, there is no evidence of record that supports plaintiff's claim that Kennecott actively concealed Dr. Goldstein's evaluation. Matthews never asked Kennecott for a copy of the report. Although he did ask Dr. Goldstein's secretary for a copy of the report, he never asked Dr. Goldstein himself. The plaintiff did not ask Kennecott or Dr. Goldstein about the results of the evaluation.

Equitable estoppel is virtually nonexistent as an asserted basis for tolling the limitations periods under federal law in the Tenth Circuit. In one case, *Wilkerson v. Siegfried Insurance Agency, Inc.,* 621 F.2d 1042, 1045 (10th Cir.1980), the Tenth Circuit lumped estoppel and tolling together and suggested that the same factors be considered by the court in determining whether either doctrine applied.

 Even if the statute of limitations was tolled until Matthews got a copy of the Goldstein report, he waited too long to file his charge. Once tolling has ceased, a plaintiff must act promptly and file his claim—he is not automatically entitled to wait another 300 days to file. *Million v. Frank,* 47 F.3d 385, 389 (10th Cir.1995). He received a copy of the report on September 8, 1995. He did not file the claim until May 6, 1996.

### B. Remaining Causes of Action

 Defendant claims that the fourth through seventh causes of action are preempted by federal law under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185. Defendant bases its claim on the argument that Matthews' state law claims require interpretation of the collective bargaining agreement between Kennecott and the employee unions. "[I]f the resolution of a state law claim depends upon the meaning of a collective

bargaining agreement" the state law claim is preempted by Section 301 of the LMRA. *Lingle v. Norge Division of Magic·Chef, Inc.,* 486 U.S. 399, 405–6, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Matthews was a union member and his employment was governed by the terms of the agreement. The challenged employment actions are addressed by various articles of the collective bargaining agreement. Therefore, the state law claims for breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent supervision cannot be resolved without interpreting the terms of the collective bargaining agreement. As a result, all of Matthews' remaining claims are "inextricably intertwined" with consideration of the terms of the collective bargaining agreement and, thus, preempted. *See Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1121 (10th Cir.1995). Plaintiff chose not to respond to defendant's claim that the fourth through seventh causes of action are preempted by federal law. Defendant also claims that summary judgment should be granted on the fourth, sixth and seventh causes of action for different reasons. Plaintiff also failed to respond to those additional claims. The defendant's additional arguments regarding the fourth, sixth, and seventh causes of action are set forth below.

### 1. Plaintiff's Fourth Cause of Action

 Defendant also asserts that summary judgment on plaintiff's fourth cause of action should be granted because, treated as an LMRA claim under section 301, plaintiff did not exhaust his administrative remedies and his claim is untimely. Plaintiff did not file any grievance regarding the job transfers·or bid denials. His claim regarding his termination is untimely because it was not filed within six months of its accrual. In making out a breach of collective bargaining agreement, an employee is subject to the federal six-month limitation period set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1935). *See DelCostello v. Inter-*

*national Brotherhood of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This action was commenced on July 11, 1997, two years to the day after Matthews last worked at Kennecott. He did file a grievance concerning his termination, which the Union pursued until arbitration where it abandoned the claim. Within six months after July 1995, Matthews knew the union did not take the grievance to arbitration. Matthews filed his lawsuit for breach of contract more than a year too late. Therefore, his first cause of action, preempted and treated as a section 301 claim, is clearly untimely and should be dismissed.

### 2. Plaintiff's Sixth Cause of Action

 Defendant also asserts that Matthews' claim for intentional infliction of emotional distress fails as a matter of law because the challenged conduct is not outrageous. A plaintiff in Utah claiming intentional infliction of emotional distress must prove: (1) the defendant intentionally engaged in some conduct toward the plaintiff considered outrageous in that it offends the generally accepted standards of decency and morality (2) with the purpose of inflicting emotional distress or where any reasonable person would have known such result, and (3) such emotional distress resulted. *See Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 905 (Utah 1992). Whether the conduct is outrageous enough is a legal question for the court to resolve. *See Metcalf v. Metropolitan Life, Inc.,* 961 F.Supp. 1536 (D.Utah 1997). The burden of proving outrageous conduct is a heavy one. Liability exists only where the conduct is "atrocious, and utterly intolerable in a civilized community." *Retherford v. AT & T Communications,* 844 P.2d 949, 977–78. Defendant argues that the conduct Matthews complains of does not rise to the requisite level of outrageousness. The conduct complained of consisted of a "demotion", bid denials and termination. Defendant cites numerous Utah cases holding that termination and demotion are

not sufficiently "outrageous" actions. *See Larson v. SYSCO Corp.*, 767 P.2d 557, 561 (Utah 1989); *Robertson v. Utah Fuel Co.*, 889 P.2d 1382, 1388–89 (Utah Ct.App. 1995).

### 3. Plaintiff's Seventh Cause of Action

 Defendant also argues that the plaintiff's seventh cause of action is barred by the exclusive remedy provision of the Utah Worker's Compensation Act, Utah Code Ann. § 35–1–60 (1988). The Workers' Compensation Act expressly states that compensation under the Act is intended to be the exclusive remedy an employee has against an employer for any injury incurred by the employee arising out of his employment. Thus, if Matthews suffered any injury compensable under the Act, the exclusive remedy provision should bar a separate negligence action for those injuries. *See Mounteer v. Utah Power & Light Co.*, 773 P.2d 405, 407 (Utah App. 1989). The Utah Supreme Court has identified the injury intended to be addressed by the Workers' Compensation Act as "physical or mental injury." *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1057 (Utah 1991). Accordingly, insofar as physical or mental injuries are an indispensable element of Matthews' negligent supervision claim, the claim is barred and should be dismissed. *See Retherford*, 844 P.2d at 964 & 965 n. 8. Defendant asserts that an analysis of Matthews' claim demonstrates that it does require proof of physical or mental injuries as an indispensable element. Matthews claims that he suffered pain and suffering, mental anguish and emotional distress, which are clearly mental injuries. Accordingly, they are barred.

Matthews' claim for lost earnings and other employee benefits is also barred. The Utah Supreme Court has held that expenses or losses incidental to or caused by the mental injury, such as medical expenses or lost earnings resulting from the mental injury should be dismissed. *See Mounteer*, 823 P.2d 1055, 1056, 1058. Matthews' claim for lost earnings flows directly from his mental injury. Matthews' testimony indicated that Kennecott's conduct has so scarred him mentally and emotionally that he cannot work. Any lost earnings are a result of his mental injury. Consequently, his seventh cause of action should be dismissed in its entirety as barred by the exclusive remedy of the Utah Workers' Compensation Act.

### VI. Conclusion

For the reasons stated above, the Court hereby GRANTS defendant Kennecott's motion for summary judgment with respect to plaintiff's remaining claims. Therefore, this case is DISMISSED.