2000 UT 12

**Richard L. TRETHEWAY, Plaintiff and Appellant,**

v.

**MIRACLE MORTGAGE, INC., dba New World Mortgage, Defendant and Appellee.**

No. 990020.

Supreme Court of Utah.

Jan. 14, 2000.

Richard L. Tretheway, Springville, Larry S. Jenkins, Salt Lake City, for plaintiff.

Cass C. Butler, Salt Lake City, for defendant.

HOWE, Chief Justice:

¶ 1 Plaintiff Richard L. Tretheway appeals from a summary judgment granted to defendant Miracle Mortgage, Inc., dba New World Mortgage (New World). Tretheway argues he suffered damage as a result of misrepresentations made to him by New World.

## FACTS

¶ 2 In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See Higgins v. Salt Lake County*, 855 P.2d 231, 231 (Utah 1993); *Smith v. Batchelor*, 832 P.2d 467, 468 (Utah 1992); *Rollins v. Petersen*, 813 P.2d 1156, 1158 (Utah 1991). We state the facts in this case accordingly.

¶ 3 Richard L. Tretheway, a licensed attorney, is in the business of making personal loans and brokering loans for other lenders. In early 1996, a potential borrower in New Mexico was referred to him by Kevin Oviatt, an agent of New World. Oviatt received a $1,600 commission for the referral. At Tretheway's request, Oviatt provided him with (1) a copy of a tax assessment made by a New Mexico county assessor valuing the property at $81,000, and (2) a written representation by Oviatt affirming that he had inspected the property and determined that it was worth $81,000, that the borrower had an income of $1,600 per month, and that New World would be able to provide permanent financing for the property in about one year. Tretheway knew that Oviatt was not a licensed appraiser.

¶ 4 Based on New World's representations, Tretheway brokered and subsequently guaranteed a mortgage loan for $55,000 made by C. Jess Groesbeck, M.D., a Professional Corporation, Profit-sharing 401(k) Plan to Teresa B. Marez, the New Mexico mortgagee. Several months later, Marez defaulted on the loan, and the 401(k) Plan commenced a mortgage foreclosure action against her. Marez owed $67,446.98 in principal, interest, and other costs. At a foreclosure sale, the 401(k)

Plan was the highest bidder and purchased the property for the full amount owing by Marez. Three days later, the 401(k) Plan executed a quitclaim deed to Tretheway and his wife for the property for which Tretheway paid the Plan $67,446.98 as guarantor of the loan.

¶ 5 Tretheway alleges that after the sale he learned the property was worth significantly less than both the $81,000 Oviatt had represented its value as being, and the $67,446.98 the 401(k) Plan had paid for it at the sale. However, New World asserts that Tretheway became aware of the property's diminished value during an inspection of the property with his New Mexico attorney in September 1996, prior to the 401(k) Plan's bid at the foreclosure sale.

¶ 6 Tretheway brought this action in his capacity as guarantor of the loan, not as a broker, against New World to recover approximately $42,000 in damages he allegedly lost as a result of New World's misrepresentation of the value of the property. New World moved for summary judgment arguing that as a matter of law, Tretheway's action for fraud failed because he was unable to establish he had suffered any damages. The district court agreed and granted the motion for summary judgment. Tretheway appeals.

## ANALYSIS

¶ 7 Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Higgins,* 855 P.2d at 235; *Rollins,* 813 P.2d at 1159. We are not required to give the trial court's determination of the legal issue presented any deference. *See Higgins,* 855 P.2d at 235. In this instance, we must decide whether a lender who, in reliance upon an alleged fraudulent misrepresentation of a third party, bids the full amount of the debt at a foreclosure sale and thereby extinguishes the debt, may collect damages from the third party for fraud.

¶ 8 Fraud is "a false representation of an existing material fact, made knowingly or recklessly for the purpose of inducing reliance thereon, upon which plaintiff reasonably relies to his detriment." *Schwartz v. Tanner,* 576 P.2d 873, 875 (Utah 1978). To make fraud actionable, there must be some damage to the plaintiff for which he seeks recovery. *See Kinnear v. Prows,* 81 Utah 135, 138, 16 P.2d 1094, 1095 (1932).

¶ 9 In granting New World's motion for summary judgment, the trial court concluded that Tretheway could not establish that he had suffered any damages as a guarantor because the property was sold at the judicial foreclosure sale for the entire amount of the 401(k) Plan's loss, extinguishing the mortgage debt which Tretheway had guaranteed. The court noted that the entire debt owed to the 401(k) Plan, including interest, was $67,446.98. The judicial sale resulted in that exact amount. The court wrote in its memorandum decision:

> Inasmuch as this amount equalled [sic] or exceeded the amount of the total loss of the 401(k) Plan and exceeded Plaintiff's alleged damages of $41,713.72, Plaintiff, as a matter of law, cannot establish that he has been damaged even one dollar for the alleged misrepresentations of Defendant. Moreover, even if Plaintiff did suffer any damages, he has been compensated in full for those damages by receiving title to the real property that was foreclosed. The value of the property was established by the amount of the bid at the foreclosure sale, which is exactly the amount of the loan plus costs and attorney's fees. Accordingly, because the amount the property sold for at the foreclosure sale exceeds Plaintiff's claimed loss of $41,713.72, he cannot establish that he is entitled to any damages, as a matter of law.

¶ 10 In assailing the reasoning of the trial court, Tretheway relies on the decision of the California Supreme Court in *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995). It is the sole case the parties have found discussing the issue before us. In *Alliance,* defendant Rothwell, a real estate appraiser and broker, and other defendants, including two title insurance companies, devised and implemented an elaborate scheme to fraudulently induce Alliance to lend money for the purchase of nine residences. In furtherance of

this plan, two fictitious companies were created to falsely verify employment of, and deposits by, purported loan applicants. *See id.* at 604, 44 Cal.Rptr.2d 352.

¶ 11 Relying on defendants' representations, Alliance loaned the funds to purchase the properties and secured them by deeds of trust. The fictitious borrowers then defaulted, and Alliance purchased many of the properties at nonjudicial foreclosure sales, bidding the full credit value of the outstanding indebtedness on the notes, plus interest and costs. *See id.*

¶ 12 After acquiring title to the properties, Alliance discovered "that the true market value of the properties was far less than the value represented to Alliance and, at the time of the foreclosures, remained far less than the outstanding principal amount of the loans together with all other expenditures." *Id.* (internal quotations omitted). Alliance brought suit to recover its damages. As in the instant case, the defendants contended that Alliance had not sustained any damages because Alliance had bid the full amount owing on the notes at the foreclosure sales. *See id.* at 605, 44 Cal.Rptr.2d 352.

¶ 13 The court held that to the extent Alliance's full credit bids were proximately caused by its reasonable reliance on defendants' fraudulent misrepresentations, its bids could not be deemed an admission of the properties' values. *See id.* at 616, 44 Cal. Rptr.2d 352. The court noted that it was not unusual for a mortgagee to make a bid on the property in the amount owing on the debt because it cannot recover a deficiency under California law. *See id.* at 608, 44 Cal.Rptr.2d 352. Sustaining Alliance's action for fraud, the court discussed the defendants' contention that Alliance had failed to allege any actual damages:

> This argument is dependent on defendants' assumption that the measure of damages for fraudulent inducement of a loan is the impairment of the lender's security or the balance of the outstanding indebtedness. Not so. Alliance does not allege here that defendants impaired its security or caused the value of the property to decrease *after* the loans were made. Rather, it alleges that defendants' intentional misrepresentations regarding the properties' characteristics and values induced it to make loans that far exceeded the properties' actual worth *at the time the loans were made,* and that as a result of these misrepresentations Alliance purchased the properties. In other words, defendants did not damage or impair Alliance's security interest; rather they deceived Alliance at the outset as to what that security was.... Once again, just as a suit for fraud against a borrower "is a completely separate remedy than a suit on the promissory note secured by the deed of trust," and hence not barred by the anti-deficiency statutes a lender's suit against its fiduciaries or agents for fraudulently inducing it to make loans and purchase property is a completely separate cause of action from a suit for impairment of its security.

*Id.* at 615, 44 Cal.Rptr.2d 352 (citations omitted).

¶ 14 New World seeks to distinguish *Alliance* from the instant case because (1) in *Alliance,* the property was sold at a nonjudicial foreclosure sale, whereas the property in the instant case was sold at a judicial foreclosure sale; and (2) California's law on foreclosure is significantly different from New Mexico law. These distinctions are unavailing. Tretheway seeks damages for fraud in inducing him to guarantee a loan made by Dr. Groesbeck on overvalued real estate. Whether the subsequent foreclosure when the borrower defaulted was by a judicial sale or a nonjudicial sale makes no difference. Neither does any difference in the law of California and New Mexico regarding the availability of a deficiency judgment against a borrower following the foreclosure sale have any bearing on the fraud in the inducement alleged by Tretheway. *Alliance* is soundly reasoned, and we opt to follow it.

¶ 15 The summary judgment is reversed, and the case is remanded to the trial court for further proceedings.

¶ 16 Associate Chief Justice DURHAM, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Chief Justice HOWE's opinion.