2000 Utah Ct. App. 010

Carla CANNON, Plaintiff and Appellant,

v.

The TRAVELERS INDEMNITY COMPANY, Defendant and Appellee.

No. 980246–CA.

Court of Appeals of Utah.

Jan. 27, 2000.

L. Rich Humpherys and Nathan D. Alder, Christensen & Jensen P.C., Salt Lake City, for Appellant.

Terry M. Plant and John N. Braithwaite, Plant, Wallace, Christensen & Kanell, Salt Lake City, for Appellee.

Before BENCH, JACKSON, and WILKINS,[1] JJ.

---

1. Justice Wilkins heard the arguments in this case and participated in its resolution prior to his swearing-in as a member of the Utah Supreme Court.

## OPINION

JACKSON, Judge:

¶ 1 Carla Cannon appeals from the trial court's grant of summary judgment to Travelers Insurance Company (Travelers). We affirm.

## BACKGROUND

¶ 2 "In reviewing a grant of summary judgment, we consider the facts in the light most favorable to the nonmoving party, here the appellant[ ]." *Parker v. Dodgion,* 971 P.2d 496, 496–97 (Utah 1998).

¶ 3 On August 16, 1992, Cannon went to the home of her relatives, Scott and Jesselie Anderson (the Andersons). Cannon's ten-year-old niece, Heidi Anderson, greeted Cannon by jumping up on her, putting her arms around Cannon's neck and her legs around Cannon's waist. Cannon contends Heidi's actions caused her immediate back pain and injury. Cannon then went to her parents' home, told them about the injury, and went to bed, unable to move normally. Cannon did not mention the injury to the Andersons, nor did Jesselie Anderson notice anything amiss when Heidi greeted Cannon. Further, Cannon's mother strongly urged Cannon not to tell the Andersons about the injury because she was concerned about unrelated litigation, involving the estate of a deceased family member, in which the Andersons were expected to testify.

¶ 4 By late November 1992, Cannon's condition had worsened and needed medical attention. When her physician recommended surgery, Cannon told the Andersons about the injury and asked them about possible coverage under their homeowners insurance policy. The Andersons checked with their agent, who told them that Travelers would not pay Cannon's medical expenses.

¶ 5 Cannon had back surgery on December 9, 1992. The surgery was only partially successful, and she still has nerve pain, leg problems, and other disabilities. On December 21, 1992, Cannon submitted a claim to Travelers to have her medical bills paid under the medical payment coverage of the Andersons' homeowners policy. Travelers contends it did not receive the December 21 letter until January 5, 1993. Travelers's adjustor, Tom Day, then contacted the Andersons, who said they did not learn about the claim until December 1992, and that they thought Cannon might have injured her back in a sporting event or by lifting her invalid father.

¶ 6 Day initially concluded that Cannon's injuries were not sustained on the insured premises. By the end of January 1993, Cannon had signed a medical release to allow Travelers to obtain her medical records. By mid-February, Cannon gave Travelers a statement from her physician, which stated that the August 1992 incident could have led to the later disc rupture and need for surgery. Travelers rejected Cannon's claim on the ground that there was no medical certainty that Cannon's injury occurred on the insured premises. Although Cannon said her parents and other witnesses could verify that the injury occurred on the day in question, Day did not contact Cannon's parents or the other witnesses.

¶ 7 On April 21, 1993, Travelers took a recorded statement from Cannon. On June 14, 1993, Day offered to settle for a portion of Cannon's medical payments claim, on the condition that she release her potential liability claim against the Andersons. Cannon did not accept Travelers's offer, stating that she would only accept the medical payment benefits unconditionally. Thereafter, in August 1993, Travelers sent Cannon two checks totaling $352.20, which Cannon cashed.

¶ 8 Cannon contends that even though she repeatedly tried to communicate with Travelers, the company's only response after June 1993 was to send the two checks in August. Accordingly, Cannon retained counsel. On October 4, 1994, Cannon filed a complaint alleging four causes of action. She argued: (1) she was an unnamed insured and thus entitled to receive a copy of the Andersons' policy from Travelers; (2) Travelers breached the express and implied terms of the policy by failing to pay Cannon the medical payments policy limit; (3) Travelers breached its duty of good faith and fair dealing; and (4) Travelers breached insurance regulation statutes and rules, industry standards,

and its own internal policies. About two months after Cannon filed this complaint, Travelers gave her a copy of the Andersons' insurance policy.

¶ 9 On June 9, 1995, Cannon submitted a settlement proposal to Travelers. The proposal included affidavits from Cannon's parents and her sister, explaining why Cannon did not complain to the Andersons for several months, and providing evidence that Cannon had told her parents about the incident and had complained of back pain on the evening of the incident. Shortly thereafter, on July 18, 1995, Travelers paid Cannon the full medical payments limit of $10,000.

¶ 10 Travelers moved for summary judgment on July 14, 1997. Travelers argued that there was no further claim for breach of the express contract terms after payment of the medical expenses, that there was no claim for breach of an implied covenant of good faith and fair dealing because Cannon had no contractual privity with Travelers, and that the validity of Cannon's claim was fairly debatable. A hearing on the motion was held on November 10, 1997. The court ruled that the first and third causes of action of Cannon's first amended complaint would be dismissed on the ground that Cannon lacked contractual privity with Travelers and was not defined as an insured in the policy. Further, the court ruled that the right to sue for medical benefits, without contractual privity, did not give rise to the covenant of good faith and fair dealing that exists between parties to the contract.

¶ 11 The court also dismissed Cannon's fourth cause of action, ruling that alleged violations of the Utah Unfair Claim Settlement Practices statutes and rules do not give rise to a private cause of action. On Cannon's second cause of action, for breach of the express policy terms, the court ruled that the broad consequential damages sought were not available for breach of the express terms. It denied the motion to the extent that Cannon sought attorney fees and litigation expenses incurred in pursuing her claim for reimbursement of medical expenses, and further sought interest on the medical expenses up to the point when they were paid.

¶ 12 The court's order granting partial summary judgment was entered on December 10, 1997. Cannon and Travelers later settled the remaining part of the second cause of action. The parties therefore stipulated to an Order of Dismissal with prejudice on the remaining claim, and the Order of Dismissal was entered by the court on April 30, 1998.

### ISSUES AND STANDARD OF REVIEW

¶ 13 Cannon presents four issues on appeal. First, she argues the trial court erred when it ruled that she was a third-party insured, and not a first party insured under the Andersons' policy. Second, she argues the trial court erred when it ruled that Travelers did not owe her a duty of good faith and fair dealing in regard to her medical payments claim. Third, she contends the trial court erred when it ruled that there was no private cause of action arising from statutes, regulations, industry standards, and Travelers's own internal standards. Finally, she argues the trial court erroneously ruled that Cannon could not recover consequential and other damages.

¶ 14 " 'Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " *Parker v. Dodgion*, 971 P.2d 496, 497 (Utah 1998) (citation omitted). "We view the facts and inferences in a light most favorable to the losing party[,]" and we will affirm the judgment only "where there is no genuine dispute as to a material fact or where, viewing the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law." *Pixton v. State Farm Mut. Auto. Ins. Co.*, 809 P.2d 746, 748 (Utah Ct.App.1991). "Because the question of whether summary judgment is appropriate is a question of law, we accord no deference to the trial court." *Parker*, 971 P.2d at 497.

### ANALYSIS

#### I. Whether Cannon is an Insured Under the Policy

¶ 15 Cannon first takes issue with the trial court's determination that she was not an

insured under the policy. Instead, she contends she is a first-party insured. We disagree. " 'We use the term "first party" to refer to an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured.' " *Sperry v. Sperry*, 990 P.2d 381, 1999 UT 101, ¶ 8, 381 Utah Adv. Rep. 27 (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798 n. 2 (Utah 1985)). Cannon does not argue that she was a party to the contract, nor does she contend that she was in contractual privity with a party to the contract. Rather, she contends that (1) the policy language is ambiguous and militates in favor of a finding that she is an insured, (2) she should be considered an insured in light of industry practice, and (3) public policy weighs in favor of finding her an insured under the policy.

¶ 16 "Insurance policies are merely contracts and should thus be interpreted under the same rules governing ordinary contracts." *Village Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 582 (Utah Ct.App.1990). "Whether a contract is ambiguous is a question of law," which we review for correctness. *Id.* "If a contract is determined to be unambiguous, its interpretation is also a question of law." *Id.*

■ ¶ 17 We conclude the policy is unambiguous regarding Cannon's purported status as a first-party insured. Nothing in the policy's language indicates that Cannon is a first-party insured. Nor do we find support for Cannon's assertion that she is an "unnamed insured" or just an "insured." The "named insureds" listed on the declarations page are the Andersons. Throughout the policy, as defined on the first page, the words " 'you' and 'your' refer to the NAMED INSURED shown in the Declarations." "Insured" is defined as "you and residents of your household who are a. your relatives; or b. other persons under the age of 21 and in the care of any person named above." "Insured" is

further defined, under the property and liability coverages, as "any ADDITIONAL INSURED named in the Declarations but only with respect to Coverage[ ] F and only for the 'residence premises.' "

¶ 18 Coverage F, the medical payments provision, reads in relevant part as follows:

### COVERAGE F—MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees."

¶ 19 Further along, in a section entitled "Duties of an Injured Person—Coverage F—Medical Payments to Others," the policy states that "[t]he injured person or someone acting for the injured person" must give Travelers "written proof of claim, under oath if required, as soon as is practical," and "authorize [Travelers] to obtain copies of medical reports and records." It provides further that "[t]he injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require."

¶ 20 Nowhere does the policy indicate that an injured person claiming benefits under Coverage F is an insured under the policy. Rather, the policy clearly defines who is a "named insured," gives several alternate definitions for "insured," and plainly refers to potential Coverage F claimants as "injured persons." In short, "[i]t follows from the terminology employed by this contract that persons entitled to medical payment benefits . . . are *not* 'insureds' under the contract." *Donald v. Liberty Mut. Ins. Co.*, 18 F.3d 474, 478 (7th Cir.1994).[2] Accordingly, we con-

---

2. Cannon also argues that the definition of "insured," for purposes of the liability section, as "any additional insured named in the Declarations but only with respect to Coverage[ ] F" creates an ambiguity, in light of the fact that Coverage F "does not apply to [the named insured]." We do not find this argument persua-

sive. In this case, there were no "additional insureds" named in the declarations, so the alternate definition of "insured" has no relevance. However, the policy could have contained "additional insureds" listed in the Declarations, in which case the alternate definition would have meaning. We fail to see how these provisions,

clude the trial court correctly determined Cannon is not an insured under the plain language of the policy.

## II. Duty of Good Faith and Fair Dealing

■ ¶ 21 Our determination that Cannon is not an insured under the policy decides the issue of whether she was owed a duty of good faith and fair dealing as a party to the insurance contract. It is well settled that the duty of good faith and fair dealing runs to parties to an insurance contract or their privies. *See Sperry v. Sperry*, 1999 UT 101, ¶ 7, 990 P.2d 381,; *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 535–36 (Utah 1993); *Pixton v. State Farm Mut. Auto. Ins. Co.*, 809 P.2d 746, 749 (Utah Ct.App.1991). The duty is created by the contract between the parties. *See Savage v. Educators Ins. Co.*, 908 P.2d 862, 866 (Utah 1995). In the case of first-party insurance contracts, the duty of good faith is "the essence of what the insured has bargained and paid for." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985). Because Cannon is not a party to the contract, she is not owed a duty of good faith and fair dealing as a first-party insured.[3] Also, because Cannon is not owed a duty of good faith and fair dealing, consequential damages are not available to her. *See Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 466 (Utah 1996).

### III. Private Cause of Action

■ ¶ 22 Finally, Cannon argues the trial court erred when it granted Travelers summary judgment on her fourth cause of action, ruling that the "alleged violations of the Utah Unfair Claims Settlement Practices statutes and rules do not give rise to any private cause of action." We agree with Travelers that these statutes and rules do not create a private cause of action. " 'A fundamental rule of statutory construction is that statutes are to be construed according to their plain language.' " *Arndt v. First Interstate Bank*, 1999 UT 91, ¶ 10, 991 P.2d 584 (quoting *O'Keefe v. Utah State Retirement Bd.*, 956 P.2d 279, 281 (Utah 1998)). "We do not look beyond the plain language unless we find ambiguity." *Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 259 (Utah 1998).

¶ 23 Section 31A–26–303(5), which defines "unfair claim settlement practices," states plainly that "[t]his section does not create any private cause of action." Utah Code Ann. § 31A–26–303(5) (1999). Thus, simply by examining the plain language of the statute, we conclude the trial court correctly ruled that Travelers's alleged breach of section 31A–26–303 created no private cause of action.[4]

¶ 24 Similarly, Rule 590–89–3 of the Administrative Code defines the scope of the Unfair Claims Settlement Practices Rules.[5] It states, again quite plainly, that "[t]his rule is regulatory in nature and is not intended to create a private right of action." Utah Admin. Code 590–89–3 (1996); *see, e.g., Moradi–Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58, 63–64 (1988); *Morris v. American Family Mut. Ins. Co.*, 386 N.W.2d 233, 235 (Minn. 1986) ("The great majority [of similar provisions] have been held not to create a private

---

when viewed as a whole, are ambiguous, or how they would somehow bring Cannon within the ambit of the policy as an "additional insured" or "unnamed insured."

3. Cannon also argues she is owed a duty of good faith and fair dealing as a third-party beneficiary of the insurance contract. However, our supreme court has clearly stated that under Utah law, "the duty of good faith [is limited] to first parties to insurance contracts." *Sperry v. Sperry*, 1999 UT 101, ¶ 7, 990 P.2d 381,.

4. Moreover, the statute also provides that the specified practices are "unfair claim settlement practice[s] if committed or performed with such frequency as to indicate a general business prac-

tice by an insurer." Utah Code Ann. § 31A–26–303(3) (1999). This "statutory scheme [is] ill designed for a private cause of action," *Morris v. American Family Mut. Ins. Co.*, 386 N.W.2d 233, 237 (Minn.1986), and in fact, Cannon has not argued that Travelers has a "general business practice" of engaging in unfair claims settlement practices.

5. The Unfair Claims Settlement Practices Rules were rewritten and renumbered effective September 1, 1999. Nonetheless, our result would be the same under either version. The new Rule 590–190–2, like its predecessor, states plainly that it "is regulatory in nature and is not intended to create any private right of action." Utah Admin. Code 590–190–2 (1999).

cause of action."). Rather, the purpose of the Rule is to "affirmatively establish[ ] standards of equity and good faith to guide licensees [and] encourage future *self-regulation* of the insurance industry." Utah Admin. Code 590–89–2 (1996) (emphasis added).

¶ 25 Finally, we are unpersuaded by Cannon's contention that insurance industry standards or Travelers's own internal policies create a private cause of action. Accordingly, we affirm the trial court's grant of summary judgment to Travelers on Cannon's fourth cause of action.

## CONCLUSION

¶ 26 Cannon is neither a first-party insured nor an "unnamed insured" under the policy issued by Travelers to the Andersons. Thus, she is not owed a duty of good faith and fair dealing, and consequential damages are not available to her. Accordingly, we affirm the trial court's grant of summary judgment on Cannon's first, second, and third causes of action. Finally, neither the Unfair Claims Settlement Practices statutes and administrative rules, insurance industry practice, nor Travelers's own internal policies create a private cause of action in Cannon. We therefore affirm the trial court's grant of summary judgment on Cannon's fourth cause of action.

¶ 27 WE CONCUR: RUSSELL W. BENCH, Judge, and MICHAEL J. WILKINS, Judge.