2001 UT App 322

**A.E., INC., a Utah corporation, Plaintiff and Appellant,**

v.

**SUMMIT COUNTY COMMISSION, Summit County Board of Equalization, Summit County Assessor, and Summit County Treasurer, Defendants and Appellees.**

No. 20000502–CA.

Court of Appeals of Utah.

Nov. 1, 2001.

Milo S. Marsden, Bendinger, Crockett, Peterson & Casey, Salt Lake City, for Appellant.[1]

Robert W. Adkins, David G. Bayles, David L. Thomas, and Jami Brackin, Summit County Atty. Office, Coalville, for Appellees.

Before Judges GREENWOOD, BENCH, and ORME.

## OPINION

ORME, Judge.

¶1 A.E., Inc., a Utah corporation, appeals a decision of the district court holding that for the years 1992 through 1996, Deer Valley property owned by A.E. was not entitled to the residential property tax rate reduction provided in Utah Code Ann. § 59–2–103(2) (2000).[2] We affirm.

## BACKGROUND [3]

¶2 A.E. is the owner of real property in Deer Valley, Summit County, Utah (the property).[4] Title to the property is held in A.E.'s corporate name, and tax assessments on the property are sent to the law offices of A.E.'s counsel.

¶3 From November 20, 1992, through 1996, Bret Alan Anderson resided continuously on the property. Utah law provides that "the fair market value of residential property shall be reduced by 45%, representing a residential exemption allowed under Utah Constitution Article XIII, Section 2." [5] Utah Code Ann. § 59–2–103(2) (2000). Despite Anderson's use of the property as a full-time residence, Summit County assessed taxes on the property from 1992 through 1996 based on 100 percent of its fair market value.

**1.** Appellant's Brief and Reply Brief also listed one "Rick Rambo" as counsel for appellant. Rambo also signed a stipulation, as counsel, during the course of this appeal. Rambo is not a member of the Utah State Bar, nor was his admission sought pro hac vice. Indeed, we were unable to ascertain that he is a member of the Bar of any state.

**2.** Throughout this opinion, we cite to the current version of the Utah Code and note, when necessary, where the current version varies from the version in effect at times relevant to this case.

**3.** "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Tretheway v. Miracle Mortgage, Inc.*, 2000 UT 12, ¶2, 995 P.2d 599. In this opinion, we state only the facts that relate to the basis on which we believe this appeal must be decided.

**4.** A.E. actually owns two units of real property in Deer Valley. The property designated as Unit 7 was assessed from 1992 through 1996 as .98 acres of real property improved with a building. The property designated as Unit 8 was assessed for the same years as .59 acres of unimproved land. Despite an apparent suggestion by A.E. that one full acre of the combined units be considered in this appeal, we conclude that Unit 7 is the only property at issue. *See* Utah Code Ann. § 59–2–103(3) (2000) ("No more than one acre of land *per residential unit* may qualify for the residential exemption.") (emphasis added).

**5.** In 1992 and 1993, the residential exemption was a 29.5% reduction in the fair market value of the property; in 1994, the exemption was a 32% reduction in the fair market value of residential property; and, since 1995, the exemption has been a 45% reduction in the fair market value of residential property. *See* Utah Code Ann. § 59–2–103(2) (1992; Supp.1994; Supp.1995; 2000). The varying amount of the reduction is immaterial in this case, given our resolution of this appeal.

¶ 4 For the years 1992 through 1996, A.E. paid the property taxes in full but under protest, sending a letter "Re: Payment of ... Property Taxes Under Protest" each year to the Summit County Treasurer. The letters stated as follows:

Dear [Summit County Treasurer]:

A.E., Inc., a Utah corporation, is the owner of Unit 7, The Bald Eagle Club at Deer Valley. The corporation is sending you a check ... in payment of the ... property taxes on the property known as Unit [7], The Bald Eagle Club at Deer Valley, Utah....

The corporation believes that 45 percent [6] of the taxes assessed against this parcel are unlawful and unconstitutional because the property has not been given the benefit of the residential property tax exemption that is given to other residential property in the county and state.

Accordingly, pursuant to Utah Code Annotated, Section 59–2–1327, 45 percent of the total ... taxes due are paid under protest.

Sincerely,

A.E., Inc.

a Utah Corporation

Through 1996, A.E. took no action to obtain the residential tax exemption for the property other than to annually submit the above letter with its yearly tax payment.

¶ 5 On February 3, 1997, A.E. actually submitted an application for the residential exemption, and on April 17, 1997, A.E. was granted the residential exemption for the property. Thereafter, A.E. requested the County Board of Equalization to refund the difference between the taxes A.E. had paid based on 100 percent of the property's fair market value and the lower tax assessment to which A.E. believed itself entitled under the residential exemption for the years 1992 through 1996. The Summit County Board of Commissioners, sitting as the Board of Equalization, denied A.E.'s request for a refund. The Board of Equalization explained that for A.E. to receive the benefit of the residential exemption for those years, it was required to have first applied for it.

¶ 6 A.E. appealed the Board's denial of a refund to the Utah State Tax Commission. After an initial dismissal and request by A.E. for reconsideration, the Utah State Tax Commission again dismissed A.E.'s petition.

¶ 7 A.E. then filed a complaint in district court against the Summit County Commission, Board of Equalization, assessor, and treasurer. Defendants moved for summary judgment, and A.E. filed a cross-motion for summary judgment. The district court granted defendants' summary judgment motion and denied A.E.'s motion. A.E. timely appealed to the Utah Supreme Court which, under Utah Code Ann. § 78–2–2(4) (2000), transferred the appeal to this court.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 A.E. argues "[t]he trial court erred in ruling that[, under Utah Code Ann. § 59–2–1102(3),] A.E., Inc. had to file an [application] to qualify for the primary residence exemption." A.E. "raises a question of the trial court's statutory interpretation, which we review for correctness, owing no particular deference to the trial court." *In re G.D.*, 894 P.2d 1278, 1283–84 (Utah Ct. App.1995).

## ANALYSIS

■ ¶ 9 There are two determinative statutes in this case. We interpret them according to their plain meaning. *See, e.g., Evans v. State*, 963 P.2d 177, 184 (Utah 1998) ("When we interpret statutes, our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve. We therefore look first to the statute's plain language.") (internal citation omitted). The first statute authorizes a reduction in the fair market value of residential property for tax assessment purposes: "Beginning January 1, 1995, the fair market value of residential property shall be reduced by 45%, representing a residential exemption allowed under Utah Constitution Article

---

6. A.E. varied the percentage noted in its annual protest letter to accord with the reduction rate then in effect. *See* Note 5.

XIII, Section 2, Utah Constitution." Utah Code Ann. § 59–2–103(2) (2000). The second statute addresses when an "exemption may be granted" or when a "reduction may be made in the value of property":

> No reduction may be made in the value of property and no exemption may be granted unless the party affected or the party's agent makes and files with the board a written application for the reduction or exemption, verified by signed statement, and appears before the board [of equalization] and shows facts upon which it is claimed the reduction should be made, or exemption granted. The board may waive the application or personal appearance requirements.

Utah Code Ann. § 59–2–1102(3) (2000).[7]

¶ 10 Absent waiver by the board of equalization, the plain language of these sections permits only one interpretation: To qualify for the "residential exemption"—a percentage reduction in the fair market value of one's property—one must "make[ ] and file[ ] with the board a written application for the reduction or exemption, verified by signed statement, and appear[ ] before the board and show[ ] facts upon which it is claimed the reduction should be made, or exemption granted." *Id.* § 59–2–103(2), –1102(3).

■ ¶ 11 Such an application was not made and filed by A.E. until 1997, and the Board clearly did not waive this requirement for A.E. for the years 1992 through 1996. Thus, the trial court was correct in conclud-

ing that A.E.'s property did not qualify for the residential exemption for those years.

■ ¶ 12 A.E. argues that the application requirement of section 59–2–1102(3) applies only to the exemptions created in Part 11 of the Property Tax Act and does not apply to the residential exemption of section 59–2–103(2), it being created in Part 1 of the act.[8] We disagree. Section 59–2–1102(3) contains no such limiting language. Rather, it states, without any limitation other than the stated waiver provision, that *"[n]o reduction* may be made in the value of property and *no exemption* may be granted unless the party affected … makes and files … a written application for the reduction or exemption[.]*" Utah Code Ann. § 59–2–1102(3) (2000) (emphasis added). Thus, qualification for receiving section 59–2–103(2)'s *"reduc[tion]"* in "the fair market value of residential property," which "represent[s] a residential *exemption," id.* § 59–2–103(2) (emphasis added), is clearly subject to section 59–2–1102(3)'s sweeping mandate.[9]

■ ¶ 13 Absent a waiver of the requirement by the local board of equalization, it is not surprising that the Legislature would place the burden of proving qualification for the residential exemption on the property owner. The property owner, not the county or its assessor, is in possession of the best evidence of a property's use. Requiring counties to investigate each parcel of property within their boundaries to discover whether those properties are being put to residential use would impose a significant burden.

---

7. Effective May 1, 2000, the Legislature replaced "oath" with "signed statement" in section 59–2–1102(3). *See* Utah Code Ann. § 59–2–1103(2) (2000) (historical notes). Other sections requiring an application in order to obtain the benefit of an exemption were changed to indicate that the applications required a "statement" or "signed statement" rather than an "affidavit." *See* Utah Code Ann. §§ 59–2–1101, –1102 (2000) (historical notes).

8. A.E.'s argument is based on the assertion that "[s]ection 59–2–1101(1) explicitly confines the scope of all of Part 11 to the 'exemptions authorized by this part,'" thus placing the residential value reduction, a creation of Part 1, beyond the reach of subsection 1102(3). This assertion is untenable. Section 59–2–1101(1) reads in relevant part: "The exemptions … authorized in

this part may be allowed only if the claimant is the owner of the property as of January 1 of the year the exemption is claimed…." Utah Code Ann. § 59–2–1101(1) (Supp.2001). Section 59–2–1101(1) clearly does not purport to restrict application of the whole of Part 11, including section 59–2–1102(3), to only those exemptions created in Part 11. It merely says the exemptions created in Part 11 are available to a taxpayer only if the taxpayer owned the property on January 1 of the particular year.

9. Also in support of its argument that section 59–2–1102(3) does not apply to the residential exemption, A.E. contends Summit County Ordinance 319 recognizes that Part 11 "is silent as to the 'residential exemption.'" Insofar as any local ordinance reflects a misreading of a state statute, we of course are not bound by the ordinance.

At the same time, it is understandable that the Legislature would grant counties broad authority to waive the application or personal appearance requirements. Where property is clearly located within a residential neighborhood and title is held in the name of an individual or, say, of a husband and wife, and where the tax assessments are regularly sent to the residential address, it would likewise be an undue burden to require the owner of each such parcel to submit an application and appear to testify before the county's board of equalization in order to secure the residential exemption. With these considerations in mind, the Legislature has reasonably placed the onus on property owners to establish their exemption status by application and testimony unless the local board of equalization determines that these requirements are not necessary.

¶ 14 This case highlights the policy considerations underlying the application requirement for the residential exemption. Title to the property in this case is held in a corporate name; tax assessments on the property are sent to the law offices of the corporation's counsel; and the property is admittedly "known as Unit [7], The Bald Eagle Club at Deer Valley." This information, which is all that was immediately known to the county assessor and the Summit County Board of Equalization, does nothing to suggest residential use of the property. On the contrary, it suggests the property is a corporate asset held as an investment, used for business entertainment, or rented out to skiers.

■ ¶ 15 For at least three reasons, A.E.'s annual letter "Re: Payment of ... Property Taxes Under Protest" does not substitute for the requirements of section 59–2–1102(3).

First, A.E.'s letter was sent and addressed to the Summit County Treasurer rather than to the Board of Equalization or the assessor. Second, although the letter informed that "the corporation believes that 45 percent of the taxes assessed against this parcel are unlawful," and asserted an unsubstantiated claim to the reduction, it did nothing to comply with the requirement that A.E. "appear[ ] before the board and *show[ ] facts upon which it is claimed the reduction should be made,*" Utah Code Ann. § 59–2–1102(3) (2000) (emphasis added), which requirement had not been waived by the Board in this case. Third, the letter was not verified by "oath" as required by the version of section 59–2–1102(3) then in effect. *See* Note 7.

## CONCLUSION

¶ 16 We conclude that because A.E. failed to submit an application or otherwise conform with the requirements of Utah Code Ann. § 59–2–1102(3) (2000) in any of the years 1992 through 1996, A.E. did not qualify its property for the residential property tax exemption for those years. We thus affirm the trial court's grant of summary judgment in favor of defendants.

¶ 17 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, RUSSELL W. BENCH, Judge.