2001 UT App 350

Eugene FRANCISCONI, Plaintiff
and Appellant,

v.

UNION PACIFIC RAILROAD CO.,
a Utah corporation, Defendant
and Appellee.

No. 20000408–CA.

Court of Appeals of Utah.

Nov. 16, 2001.

Jon E. Waddoups and Alexander Dushku, Kirton & Mc Conkie, Salt Lake City, for Appellee.

Before Judges JACKSON, BENCH, and ORME.

## OPINION

JACKSON, Associate Presiding Judge.

¶1 Eugene Francisconi appeals the district court's grant of summary judgment dismissing his claims of breach of employment contract, defamation, infliction of emotional distress, and fraud against Union Pacific Railroad Co. (Union Pacific). He also appeals the district court's denial of his motions to strike Union Pacific's amended memorandum in support of its motion for summary judgment and exhibits submitted in support of that memorandum. We affirm in part, reverse in part, and remand.

## BACKGROUND [1]

¶2 Francisconi began his employment with Union Pacific by signing an at-will employment contract. His position as safety manager required him to spend a great deal of his time traveling throughout Union Pacific's "western region," but did not require him to supervise any employees. Because of the extensive travel involved, Francisconi often took advantage of Union Pacific's expense reimbursement policy (In Lieu Policy). This policy allows an employee to give cash or gifts to a host or hostess who provides a gratuitous product or service, such as a meal or lodging, in lieu of a reasonable "expense ... which the employee normally would have incurred." The In Lieu Policy explains: "The purchase of a gift for the hostess in appreciation of a gratuitous meal served to an employee while traveling on company business, at the home of a fellow employee or business associate, would represent an example of an appropriate 'in lieu of' expense." Each of Francisconi's expense claims, some of which involved stays with his father in

---

1. "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Tretheway v. Miracle Mortgage, Inc.*, 2000 UT 12, ¶2, 995 P.2d 599.

Pocatello, Idaho, was approved by his supervisor.

¶3 In 1987, Francisconi was temporarily transferred to Omaha, Nebraska, to work as a safety representative for Arthur Shoener, a Union Pacific executive. During this time, Francisconi became intimate with another employee whom, he later learned, also had an intimate relationship with Mr. Shoener. Francisconi alleges that Mr. Shoener incurred some malevolence against him as a result of his relationship with the employee. In 1994, after this assignment, Union Pacific published a policy entitled "Union Pacific General Rules for Administering Discipline Effectively" (the UPGRADE Policy), and delivered a copy to Francisconi. Union Pacific then implemented the UPGRADE Policy. The UPGRADE Policy provides for a formal disciplinary process, including a formal hearing regarding an employee's conduct prior to termination.

¶4 On April 26, 1996, Francisconi was directed to attend a meeting in Omaha, Nebraska (the Omaha Meeting), without being told the purpose of the meeting. At the meeting, six Union Pacific officers and agents, including auditors, supervisors, and a railroad policeman, confronted Francisconi for four hours. Union Pacific accused Francisconi of abusing the In Lieu Policy, and presented some grounds and documents capable of being construed as evidence of abuse, such as altered receipts he had submitted. He was also accused of lying, theft, fraud, and abuse of his position. Further, Francisconi was told that Union Pacific was considering having him criminally prosecuted, which would lead to a search of his relatives' homes.

¶5 Although Francisconi did not believe he was at fault, he asked what he could do to keep his job. He was told, "Well, the first thing you can do to save your job is to fill out a statement." Francisconi wrote and signed, at Union Pacific's direction, a statement which included the following:

> I ... freely and voluntarily admit to making in lieu of expense purchases not in accordance to the intent of the policy. I didn't include the itemized receipts for these purchases and I altered receipts to remove the itemized items listed on the receipts. I was aware that the items purchased were being given to my wife, my sister and my son and other people that my Dad chose to give them to. I also admit to including personal time with company time while I was in Pocatello on weekends and being reimbursed by the company for the time spent there for expenses. I was wrong in what I have done and am extremely sorry for misusing the expense account system.

Also during the meeting, the highest level of the UPGRADE Policy was mentioned as a possible way to resolve the matter.

¶6 After the meeting, Francisconi experienced extreme anxiety, lack of sleep, and an outbreak of hives. The assistant vice-president of Union Pacific, Mr. Campbell, telephoned Francisconi several times demanding his resignation and that he release Union Pacific from liability. Mr. Campbell, knowing that Francisconi's wife was experiencing health problems, threatened that Francisconi would not be insured from April 30, 1996, would not receive COBRA medical coverage, would not be paid for the month of May, and would be criminally prosecuted. Mr. Campbell did not retract these threats even after Francisconi explained that his wife was scheduled for surgery. Further, "[t]he health care benefits department of [Union Pacific] was directed by ... the human resources director of the railroad operations department, which was headed by Mr. Shoener, not to offer COBRA coverage to" Francisconi's wife. These directions were initially followed, causing the surgery to be rescheduled until Francisconi's wife finally obtained COBRA coverage.

¶7 Union Pacific then terminated Francisconi for alleged willful disregard of the In Lieu Policy and for intent to deceive Union Pacific in his use thereof. He now appeals the district court's summary dismissal of his claims.

## STANDARD OF REVIEW

¶8 " ' "On an appeal from a grant of summary judgment, we review the trial court's legal conclusions for correctness and

grant them no deference.” ’ ” *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 9, 21 P.3d 219, *cert. denied*, 20 P.3d 403 (Utah 2000). Thus,

> “[w]e consider only whether the trial court correctly applied the law and correctly concluded that no disputed issues of material fact existed.” ... [S]ummary judgment is appropriate only “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”

*Sittner v. Schriever*, 2001 UT App 99, ¶ 7, 22 P.3d 784 (citations omitted).

## ANALYSIS

I. Breach of Employment Contract Claims

¶ 9 “An at-will relationship ... may be modified by a subsequent ‘implied or express agreement that the employment may be terminated only for cause or upon satisfaction of any other agreed-upon condition.’ ” *Wood v. Utah Farm Bureau Ins. Co.*, 2001 UT App 35, ¶ 12, 19 P.3d 392 (citation omitted). Because Francisconi’s employment contract with Union Pacific did “not have a specified term of duration,” it is presumed to be an at-will arrangement. *Ryan v. Dan’s Food Stores, Inc.*, 972 P.2d 395, 400 (Utah 1998). However, Francisconi asserts that genuine issues of material fact exist as to whether there was an implied-in-fact employment contract between himself and Union Pacific.

> Although the existence of an implied contract is a factual question, “the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists.” If we conclude that a reasonable jury could not find an implied contract, we will affirm the summary judgment.

*Id.* at 401 (quoting *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 306 (Utah 1992)).

¶ 10 Francisconi first argues that there is a genuine issue of material fact as to whether the In Lieu Policy created such an employment contract. He contends that

[t]o induce him to perform his job as safety manager, [Union Pacific] agreed that it would not make [Francisconi’s] use of the [In Lieu Policy] a basis for termination so long as the use was proper. To suggest otherwise would be to say that [the parties] agreed that [Francisconi] could be terminated for using the [In Lieu Policy] even if the use was proper.

The district court rejected this argument, concluding that Francisconi “fail[ed] to make a persuasive case that [the In Lieu Policy] ... changed the nature of his employment.” We agree.

¶ 11 Francisconi cites *Sanderson* as legal support for his argument. The court in *Sanderson* noted that “[i]n addition to a promise for a specified employment term or a for-cause requirement for termination, an employer can ... *agree* to use a certain procedure for firing employees or *promise* not to fire employees for a certain reason, thereby modifying the employee’s at-will status.” 844 P.2d at 307 (emphasis added). The In Lieu Policy is not an agreement “to use a certain procedure for firing employees,” and Francisconi presents no evidence, other than the mere existence of the In Lieu Policy and his use of it, which would indicate that Union Pacific made a “promise not to fire” him if he used the policy properly. *Id.*

¶ 12 Moreover, we have previously observed that creation of an implied-in-fact employment contract requires evidence of a specific, affirmative, and definite manifestation of the employer’s “ ‘clear and unequivocal intention to relinquish the right to fire’ ” the at-will employee. *Wood*, 2001 UT App at ¶¶ 16–17, 19 P.3d 392 (quoting *Sanderson*, 844 P.2d at 307). Francisconi has presented no such evidence. Thus, we conclude that “the evidence presented is such that no reasonable jury could conclude that the parties agreed to limit the employer’s right to terminate the employee” by the In Lieu Policy. *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001 (Utah 1991). Accordingly, we affirm the district court’s summary judgment ruling as it relates to Francisconi’s In Lieu Policy argument.

¶13 Next, Francisconi challenges the district court's conclusion that he "fail[ed] to make a persuasive case that ... the [UPGRADE Policy] changed the nature of his employment." He contends that Union Pacific's publication of the UPGRADE Policy and reference to it at the Omaha Meeting manifested the requisite intent to modify his at-will employment status. Union Pacific asserts that the UPGRADE Policy was not intended for use by managers, but for unionized employees only, and thus could not be construed as creating an implied-in-fact contract with Francisconi. Francisconi puts forth the following evidence to dispute Union Pacific's assertion: (1) Union Pacific published the UPGRADE Policy to him, although he supervised no employees; (2) Dick Davidson, Chief Executive Officer of Union Pacific, published a letter with the UPGRADE Policy stating that it would be implemented "across the entire railroad system" and that it would "be a benefit for all employees and the company;" (3) Francisconi's replacement and a former assistant manager believed that the UPGRADE policy applied to managers; and (4) two executives at the Omaha Meeting mentioned Level 5, the highest level, of the UPGRADE Policy as a possible means to discipline Francisconi.

¶14 Union Pacific either disputes each of these facts or attempts to explain why they do not modify Francisconi's at-will employment status. For example, it argues the following: the UPGRADE Policy was provided to Francisconi merely for informational purposes; Union Pacific executives never offered to let Francisconi participate in a Level 5 UPGRADE hearing; Dick Davidson's letter was simply introductory in nature, not intended to address the scope of the UPGRADE Policy; and Francisconi's replacement had no objective reason for believing the UPGRADE Policy applied to him.[2] However, "[t]aking [Francisconi's] statements as true, a reasonable jury could conclude that an implied-in-fact contract existed between [Union Pacific] and [Francisconi] and that [Union Pacific] breached that contract by terminating" him without application of the UPGRADE Policy. *Wood*, 2001 UT App 35 at ¶18, 19 P.3d 392. Accordingly, Francisconi has "established a question of fact as to whether an implied-in-fact contract existed," thus precluding summary judgment on this issue. *Id.* at ¶17.

¶15 Finally, Francisconi argues that by stating, "Well, the first thing you can do to save your job is to fill out a statement," Union Pacific created an implied-in-fact employment contract. Viewing "the facts and all reasonable inferences drawn therefrom in the light most favorable to [Francisconi]," *Tretheway v. Miracle Mortgage, Inc.*, 2000 UT 12, ¶2, 995 P.2d 599, we cannot "conclude that a reasonable jury could not find an implied contract" was created from this statement. *Ryan*, 972 P.2d at 400. Thus, whether this statement created an implied-in-fact contract is also a question of fact. Accordingly, the district court improperly granted summary judgment dismissing Francisconi's breach of employment contract claim.[3]

## II. Defamation, Fraud, and Emotional Distress Claims

¶16 The trial court also granted summary judgment dismissing Francisconi's tort claims for defamation, fraud, and emotional distress. " 'One sworn statement under oath [involving a material fact] is all that is necessary to create a factual issue, thereby

---

**2.** Union Pacific also contends that the UPGRADE Policy unambiguously excludes application to managers, but is unable to support its contention without looking to facts outside the document. For example, it asserts the fact that the UPGRADE Policy has never been applied to managers reveals the meaning of the UPGRADE Policy. Union Pacific's reliance on extrinsic facts supports our conclusion that the UPGRADE Policy is ambiguous. *See Cannon v. Travelers Indem. Co.*, 2000 UT App 010, ¶16, 994 P.2d 824, *cert. denied*, 4 P.3d 1289 (Utah 2000) (" 'Whether a contract is ambiguous is a question of law,' which we

review for correctness." (Citation omitted.)). Because there is a dispute about the material extrinsic evidence bearing on the scope of the UPGRADE Policy, Union Pacific's argument presents an issue of material fact for the district court to resolve. *See Fashion Place Inv. Ltd. v. Salt Lake County/Salt Lake County Mental Health*, 776 P.2d 941, 943 (Utah Ct.App.1989).

**3.** In light of this decision, we do not address Francisconi's challenges to the district court's denials of his motions to strike.

precluding summary judgment.' Such sworn statements include deposition testimony that is before the trial court on summary judgment." *Nyman v. McDonald,* 966 P.2d 1210, 1213 (Utah Ct.App.1998) (citation omitted) (alteration in original). Francisconi's deposition testimony alleges certain facts material to his defamation, fraud, and emotional distress claims. However, as Francisconi correctly argues,

> [t]he trial court improperly weighed evidence to reach its determination that material issues of fact surrounding [these issues] were undisputed. [Francisconi] presented evidence that created genuine issues of material fact; therefore, the trial court inappropriately granted summary judgment.

*Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283, 1293 (Utah Ct.App.1996). Regarding the defamation claim, the district court stated that "truth is a defense to a defamation claim and it is obvious that [Francisconi] did in fact misuse the [In Lieu Policy].... The [defamatory] statements were true." Regarding the emotional distress claim, the district court concluded:

> The allegations that [Francisconi] made do not rise to the standard required. Union Pacific had a right to terminate under the circumstances, and the other allegations such as cutting off medical coverage and vacation pay simply did not occur. In addition, credible evidence adduced on the part of [Union Pacific] indicates that the allegations are not true.

Regarding the fraud claim, the court noted that Francisconi "has nothing beyond his self-serving testimony to support his argument on this issue."

¶ 17 Each of these comments reveals a measure of evidence-weighing and fact-finding that is beyond the proper purview of summary judgment. "[W]e refuse to take [these issues] from the jury if there is any evidence upon which a reasonable jury could infer" the truth of Francisconi's claims.[4] *Id.* Accordingly, the district court improperly granted summary judgment dismissing these claims.

## CONCLUSION

¶ 18 We affirm the district court's grant of summary judgment with respect to Francisconi's argument that the In Lieu Policy created an implied-in-fact employment contract. However, we reverse the district court's grant of summary judgment regarding the remaining implied-in-fact contract claims. We also reverse the trial court's grant of summary judgment dismissing Francisconi's defamation, fraud, and emotional distress claims, and remand for further proceedings consistent with this opinion.

¶ 19 WE CONCUR: RUSSELL W. BENCH, Judge, and GREGORY K. ORME, Judge.

---

4. We do not necessarily say that Francisconi's claims have merit. They may not. However, in "reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Tretheway,* 2000 UT 12 at ¶ 2, 995 P.2d 599. Viewing the facts in this manner, we cannot affirm summary judgment.